725 So.2d 1282 (1998)
STATE of Louisiana
v.
Timmie HILL.
No. 97-KK-2551.
Supreme Court of Louisiana.
November 6, 1998.
Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Charles E. Heuer, New Orleans, for Applicant.
Donald Ray Pryor, New Orleans, for Respondent.
KIMBALL, Justice.[*]
We granted the State's writ to consider whether, after determining that the initial Terry stop of the defendant was unlawful, the lower courts properly suppressed evidence subsequently seized from the defendant in a search incident to his arrest on outstanding warrants. For the reasons that follow, we conclude that the lower courts erred in suppressing the evidence because even assuming that the Terry stop was unlawful, the discovery of outstanding arrest warrants constitutes an intervening circumstance which dissipates the taint of such initial police misconduct. We therefore reverse and remand to the trial court.

*1283 FACTS
At approximately 5:15 p.m. on October 19, 1996, New Orleans Police Officers John Elsensohn and Travis McCabe were on "pro-active" patrol in the area of Port and Marais Streets, an area in which the department had received a general tip of narcotics activity. Observing two unknown men in front of an abandoned building at that intersection, the officers exited their vehicles and approached the men. The defendant and his companion began to walk away from the officers in opposite directions. At some point the officers initiated a conversation with the men and subsequently frisked them for weapons, finding nothing. While conducting the interview, a computer search returned two outstanding arrest warrants on the defendant, Timmie Hill. The officers then placed Hill under formal arrest. In a search incident to that arrest, the officers discovered a crack pipe in the defendant's rear pant pocket that later tested positive for cocaine residue.
By bill of information, the State charged Timmie Hill with one count of possession of cocaine in violation of La. R.S. 40:967(C)(2). The defendant filed a motion to suppress the crack pipe gained in the search incident to his arrest. The trial court granted the defendant's motion to suppress.[1] The State sought supervisory writs to the fourth circuit court of appeal which denied relief because it found that the trial court did not err in suppressing the crack pipe. State v. Hill, 97-1012, p. 4 (La.App. 4 Cir. 9/17/97), 700 So.2d 551, 553. The fourth circuit stated "in order for the arrest to be valid, the initial stop of Mr. Hill must be valid." State v. Hill, 97-1012 at p. 2, 700 So.2d at 552. Like the trial court, the appellate court found that the officers lacked reasonable suspicion to support the initial stop of the defendant and his companion. State v. Hill, 97-1012 at p. 4, 700 So.2d at 553. The fourth circuit held that because the detention was "not lawful," and the officers only learned of the outstanding warrants after the initial detention and frisk of the defendant, the resultant discovery of the outstanding arrest warrants was also unlawful. Id. Because the arrest was made pursuant to illegally obtained warrant information, the court found that the arrest was unlawful. Therefore, the subsequent seizure of the crack pipe incident to the unlawful arrest was an unlawful seizure and the crack pipe was properly suppressed. Id. The State sought writs to this court which we granted to decide whether the lower courts properly suppressed the crack pipe as the fruit of an illegal detention. State v. Hill, 97-2551, (La.4/3/97), 717 So.2d 223.

DISCUSSION
The primary purpose of the exclusionary rule is to deter future impermissible police conduct. The rule, which requires the exclusion of evidence gained through impermissible official conduct, is designed to deter unconstitutional methods of law enforcement. Louisiana has codified this jurisprudential doctrine in Louisiana Code of Criminal Procedure Article 703(A) which provides that a defendant, adversely affected by unconstitutional police misconduct, may move to suppress any evidence on the grounds that it was unconstitutionally obtained.[2] However, there are several well-settled judicial doctrines that supply exceptions to the exclusionary rule. If one of these doctrines is applicable, evidence seized following official misconduct may not require suppression. These three jurisprudentially created doctrines which prevent the suppression of evidence are: (1) the independent source doctrine, (2) the inevitable discovery doctrine, and (3) the attenuation doctrine.[3]Wong Sun *1284 v. U.S., 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963); U.S. v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); State v. Welch, 449 So.2d 468 (La. 1984); State v. Guy, 575 So.2d 429 (La.App. 4 Cir.1991), writ denied 578 So.2d 930 (La. 1991). Because we find that the attenuation doctrine provides an exception to the exclusionary rule in this case, we need not address the other doctrines.
In Brown v. Illinois, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 427 (1975), the United States Supreme Court enunciated the multi-factor test presently used to consider whether evidence impermissibly seized should be suppressed. The primary considerations under Brown are: (1) the temporal proximity of the illegality and the acquisition of the evidence to which instant objection is made; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. Brown, 422 U.S. at 603, 95 S.Ct. at 2262, 45 L.Ed.2d at 427; State v. Scott, 389 So.2d at 1288.[4] Additionally, in considering whether the evidence should be suppressed, Brown requires us to weigh each consideration in light of the policies behind the Fourth Amendment.
Applying the Brown factors to the case before us, we note that the record from the suppression hearing provides little detail upon which to rest an analysis of the first of the Brown considerations, i.e., the temporal proximity of the Terry stop to the ultimate discovery of the crack pipe. However, it is clear that the initial Terry stop and frisk unearthed no evidence. It was only after the officers acquired the defendant's identification, discovered the outstanding arrest warrants, and arrested him that they conducted the second search which produced the evidence. Because nothing in the record indicates that any significant time lapse occurred between the initial stop and the subsequent search incident to the arrest, we will assume any time lapse was negligible. It appears that this fact weighs against finding attenuation. Yet, the Brown Court stated that "no single fact is dispositive" in determining whether or not evidence should be suppressed. Brown, 422 U.S. at 603, 95 S.Ct. at 2261, 45 L.Ed.2d at 427. "[T]he time span between the police misconduct and the [search] is not dispositive on the question of taint." United States v. Green, 111 F.3d 515, 521 (7th Cir.1997) citing United States v. Fazio, 914 F.2d 950, 958 (7th Cir.1990)(internal quotations omitted). Thus, we must *1285 weigh this factor against the others dictated by Brown.
We now turn to the second factor from Brown, the existence of intervening circumstances which is particularly significant in this case. After the stop and frisk, the computer check returned two outstanding arrest warrants for Timmie Hill. Under the Louisiana Code of Criminal Procedure, this information provided the officers with probable cause to arrest the defendant. La. C.Cr.P. art. 213.[5] This probable cause provided by the outstanding arrest warrants constituted an intervening circumstance under Brown which dissipates the taint of an initial impermissible encounter.
Other courts around the nation have also held that outstanding arrest warrants supply probable cause to arrest, and thereby, provide an intervening circumstance under Brown which dissipates the taint of an initial illegal encounter. United States v. Green, 111 F.3d 515 (7th Cir.1997); People v. Hillyard, 197 Colo. 83, 589 P.2d 939 (Co.1979); State of Nebraska v. Kenneth Thompson, 231 Neb. 771, 438 N.W.2d 131 (Neb.1989); Reed v. State of Texas, 809 S.W.2d 940 (Tex.App. 1991); State v. Rothenberger, 73 Wash.2d 596, 440 P.2d 184 (Wash.1968). For example, in United States v. Green, 111 F.3d at 523, the Seventh Circuit held that an outstanding arrest warrant dissipated the taint of an impermissible detention. In that case, Illinois officers on patrol noticed a blue Chevrolet driving in front of them which they knew had been parked in front of the residence of a man named Williams who was wanted on a federal warrant. The officers intended to stop the car to investigate the whereabouts of Williams. The officers followed the car, and when the suspect car stopped in a driveway the officers pulled their patrol car across the driveway, blocking it in. One officer halted the driver who was walking toward the house, while the other officer approached the passenger who was still in the car. The officers acquired identification from the men who turned out to be brothers, David and Avery Green, with no relationship to Williams. The officers then returned to the patrol car and ran a computer check on the Greens. Within five minutes the computer revealed an outstanding warrant for Avery. The officers then arrested Avery, and in a search incident to the arrest, the officers seized crack cocaine and a gun found in the car. The Green court applied Brown v. Illinois, finding that the outstanding warrant constituted an intervening circumstance. "The intervening circumstances of this case, because they are not outweighed by flagrant official misconduct, dissipate any taint caused by the illegal stop of the Greens." Green, 111 F.3d at 521. Thus, the outstanding warrant created an intervening circumstance which was sufficient to attenuate the taint of the officer's initial misconduct in continuing to detain the Greens without the requisite level of reasonable suspicion. Green, 111 F.3d at 521.
In People v. Hillyard, 197 Colo. 83, 589 P.2d 939 (Co.1979), the defendant and a friend were walking along the street and stopped to peer into a closed and unlit drug store when an officer stopped them, asked for identification, and ran a computer check. Discovering an outstanding AWOL warrant for the defendant, the officer arrested him. Finding the detention illegal, the court stated, "[t]hat however was the extent of the misconduct. He did not arrest upon such general suspicion. Rather, he acted because of the Navy's outstanding arrest warrant.... Once he knew of the warrant, the officer would have been derelict in his duty not to have arrested the defendant." Hillyard, 589 P.2d at 941.[6]
*1286 In another case relying on the Brown attenuation analysis, State of Nebraska v. Kenneth Thompson, 231 Neb. 771, 438 N.W.2d 131 (Neb.1989), police officers pulled over a vehicle without reasonable suspicion and asked both the driver and the defendant for identification. Defendant was unable to produce identification; however, the officer recognized him as a suspect with an active outstanding warrant for robbery. Based upon this knowledge, the officer arrested the defendant and transported him to the station. Subsequently, the defendant was identified at a physical line-up. The court refused to suppress the lineup evidence as fruit of the unlawful detention finding that the officer's recognition of him as the subject of an outstanding warrant constituted "an intervening circumstance sufficient to break the causal connection between the stop and the line-up." Kenneth Thompson, 438 N.W.2d at 137.
In Reed v. State of Texas, 809 S.W.2d 940 (Tex.App.1991), police officers on patrol observed a number of young men standing on a street corner engaging in what appeared to them to be a drug transaction. The officers asked for identification and the defendant gave a false name, indicating that he had a drivers license but did not have it with him. A computer check revealed that no license was assigned to the name the defendant had given. The officers then took the defendant to the police station to be properly identified. Upon learning the defendant's correct name, the officers discovered two outstanding warrants for his arrest. The defendant was arrested and a routine inventory search unearthed two rocks of cocaine. Although the court found the arrest unlawful, it stated that the evidence should not be suppressed because "the discovery of the outstanding arrest warrant and the legal arrest thereunder was the relevant intervening circumstance," under the second factor of Brown. Id. at 947. Further, the court found that the warrant provided an independent basis for probable cause and "was not discovered through exploitation of the initial illegal arrest." Id. See also State v. Rothenberger, 73 Wash.2d 596, 440 P.2d 184 (Wash.1968).
The facts and issues in the instant case are analogous to those cases discussed above because, after an arguably unjustified stop, a police computer returned reliable and positive information that the defendant was wanted on outstanding arrest warrants. Discovery of outstanding arrest warrants provides one of the enumerated bases of probable cause to conduct a warrantless arrest under La.C.Cr.P.art. 213. Therefore, under the Louisiana Code of Criminal Procedure, the officers had a valid basis to arrest the defendant. Accordingly, we agree with the reasoning of the courts cited above that the discovery of the existence of outstanding arrest warrants gives an officer probable cause to arrest, and may constitute an intervening circumstance within the meaning of Brown, which may dissipate the taint caused by prior police misconduct.
Because we find an intervening circumstance under Brown, we need not decide whether the fourth circuit was correct in holding that the officers lacked reasonable suspicion for the initial Terry stop and frisk of the defendant because, assuming arguendo that the NOPD officers did conduct an impermissible Terry stop, no evidence was recovered during that search; rather, the evidence was not seized until after the officers discovered the two outstanding arrest warrants, arrested the defendant, and conducted a lawful search incident to his arrest on the outstanding warrants. The officers' did not arrest and search the defendant due to exploitation of the initial Terry stop or due to any evidence gained through the exploitation of the initial stop. Instead, the officers lawfully arrested the defendant pursuant to the outstanding arrest warrants under La.C.Cr. P.art. 213. The interim discovery of the existence of the two outstanding arrest warrants *1287 provided the sole basis for the defendant's arrest and constituted an intervening circumstance under the third consideration of Brown.
Subsequent to such a lawful arrest, a search incident thereto is authorized in order to ensure officer safety and to protect against destruction of evidence. La.C.Cr.P. art. 225; State v. Jordan, 369 So.2d 1347, 1349 (La.1979); State v. Edwards, 354 So.2d 1322 (La.1978); State v. Taylor, 347 So.2d 172 (La.1977); State v. Marks, 337 So.2d 1177 (La.1976). Because the second search was conducted upon the lawful arrest of the defendant, based upon the discovery of outstanding arrest warrants, the disputed evidence was seized in a lawful search incident to arrest.
Undoubtedly, had the officers not learned the defendant's name due to the initial stop, they would not have discovered the outstanding arrest warrants. However, this information is the only link between the initial Terry stop and the ultimate discovery of the disputed evidence. To rely on this causal link in making a decision to suppress evidence would be directly contrary to the dictates of the United States Supreme Court because a per se "but for" causation test has been specifically rejected as a basis for a decision to suppress evidence. Brown, 422 U.S. at 603, 95 S.Ct. at 2261, 45 L.Ed.2d at 427; United States v. Ceccolini, 435 U.S. 268, 276, 98 S.Ct. 1054, 1060, 55 L.Ed.2d 268, 277 (1978); Wong Sun v. United States, 371 U.S. at 487, 83 S.Ct. at 417, 9 L.Ed.2d at 455, (not all evidence is the fruit of the poisonous tree simply because it would not have come to light "but for the illegal actions of the police."). Rather, properly focusing on the dictates of Brown, we find that the police officers' discovery of the outstanding warrants was a significant intervening event. The defendant's arrest was based upon probable cause not derived from the initial stop and frisk. Therefore, the search incident thereto that uncovered the crack pipe was permissible. Because we find that the crack pipe was discovered in a lawful search incident to the defendant's lawful arrest based on probable cause, we conclude that the disputed evidence was obtained through "some other means sufficiently distinguishable, thereby purging the evidence of the primary taint." Wong Sun, 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455. We find that the discovery of the outstanding arrest warrants for the defendant constituted an intervening circumstance under Brown, which sufficiently attenuated the initial Terry stop from the ultimate seizure of the disputed crack pipe.
Continuing with the Brown analysis, we must view the above considerations in light of the flagrancy of the police misconduct. Brown, 422 U.S. at 604, 95 S.Ct. at 2262, 45 L.Ed.2d at 427; State v. Scott, 389 So.2d at 1288. To this end, we note that the testimony of officers Elsensohn and McCabe at the suppression hearing did not reveal a "quality of purposefulness" in their conduct, which consisted of performing a Terry stop and frisk on an unknown individual whom they observed standing about on a street corner; nor is there any indication that the officers' conduct was "calculated to cause surprise, fright, or confusion." Brown, 422 U.S. at 605, 95 S.Ct. at 2262, 45 L.Ed.2d at 428. Thus, even if the Terry stop exceeded the officers' authority, the police conduct was not particularly egregious and did not amount to a flagrant abuse of police power. To the contrary, under the particular facts of this case, we agree with the Hillyard Court and find that, once the officers knew of the outstanding arrest warrants, they would have been derelict in their duty not to arrest the defendant. The officers' conduct in this case does not rise to the level of flagrant misconduct within the meaning of the jurisprudence, yet the gravity of the government's interest in apprehending wanted individuals is overpowering. Because the exclusionary rule is designed to prevent the use of evidence tainted by flagrant police misconduct in order to deter law enforcement practices violative of the Fourth Amendment, we find that considering the circumstances of this case, suppression of the disputed evidence would not serve the policies behind the exclusionary rule, nor contravene the protections provided by the Fourth Amendment.

CONCLUSION
The significant intervening circumstances of this case, when considered in light of the *1288 nature and extent of the official misconduct, lead us to conclude that even assuming that the officers did not have the requisite reasonable suspicion to conduct the Terry stop, any taint which might have been caused by such conduct was dissipated by the intervention of the discovery of the outstanding arrest warrants. Thus, we hold that the lower courts erred in suppressing the crack pipe as it was seized incident to the defendant's lawful arrest on outstanding warrants. We therefore reverse and remand to the trial court for further proceedings.
LEMMON, J., concurs and assigns reasons.
JOHNSON, J., dissents and assigns reasons.
LEMMON, J., concurring.
When the Brown factors are applied to the attenuation analysis, the illegal detention initiated by the unlawful stop continued up until the moment of the arrest. Therefore, there was no time lapse at all between the illegal detention and the arrest.
Nevertheless, I conclude that the arrest was sufficiently attenuated because the intervening eventthe discovery of the information that led to defendant's arrest, namely, his identification and the ensuing check for outstanding warrantsresulted from routine police procedures that were unrelated to any flagrancy in the initial police misconduct.
In the unlawful initial stop, the police were apparently overzealous in attempting to find drugs or weapons by stopping any innocently-behaving person in the area and feeling for drugs or weapons during a purported Terry frisk. When the frisk yielded nothing, the police routinely asked for the defendant's name, which was an innocuous tactic that led to the discovery of the outstanding arrest warrant. The fact that the original unlawful conduct (the stop and detention), although a "but for" cause of the discovery, apparently was not motivated by the likelihood of arresting defendant on an outstanding warrant strongly suggests that the conduct of the police was not particularly flagrant or offensive with respect to obtaining knowledge of the warrant, and that absence of flagrant misconduct further attenuates the original stop from the warrant-based arrest. See 5 Wayne R. LaFave, Search and Seizure 321 (1996), which cites State v. McInnis, 6 Cal.3d 821, 100 Cal.Rptr. 618, 494 P.2d 690 (Cal. 1972) (regarding unlawfully obtained photographs later used to identify defendant as the perpetrator of another crime). Moreover, the need for the exclusionary rule is less when police misconduct is less egregious.[1]See 5 LaFave at 236.
In sum, the unlawful stop and detention did not taint the subsequent arrest, and the crack pipe was discovered pursuant to a search incident to a lawful arrest.
JOHNSON, J., dissenting.
We must strike a balance in this case between the competing interests of a government with the responsibility to maintain safe streets, and the right of persons in America to walk the streets without fear of police action. With this decision, the court has pushed the Terry stop to new levels. Reasonable suspicion that a person may have committed a crime or is about to commit a crime is no longer a requirement for an investigatory stop in Louisiana. See, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (holding a police officer may make an investigatory stop when there is reasonable, articulable suspicion to believe that the person has been, is, or is about to be engaged in criminal activity).
The majority has concluded that persons in "high crime areas", which generally means those sections of the community with complaints of narcotics trafficking, can be stopped at will, engaged in conversation, frisked, and have their identity verified. This is an egregious violation of the Fourth Amendment to the United States Constitution *1289 which guarantees that no person shall be subject to an unreasonable search or seizure of their person or property.
The majority relies on the multi-factor test set out in Brown v. Illinois, 422 U.S. 590, 603, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) to determine whether illegally seized evidence should be suppressed. The majority concedes that the initial Terry stop and frisk, which unearthed no evidence, was illegal. However, they assert that the two outstanding arrest warrants, discovered during the defendant's unlawful detention, provide an intervening circumstance. According to the majority, this intervening circumstance allows the contraband seized during the illegal stop to be admissible. In support of this proposition, the majority relies on United States v. Green, 111 F.3d 515 (7th Cir.1997).
The majority's reliance on United States v. Green is misplaced because the defendant in Green was not illegally stopped. Although the United States Seventh Circuit Court of Appeals classified the stop as illegal, the trial court and defendant Green conceded that the stop was legitimate and justified. See, United States v. Green, 111 F.3d 515, 518 (7th Cir.1997). In Green, the police officers recognized defendant Green's car as having been parked at the home of a felon who was wanted for arrest. That is vastly different from the instant case where the police officers had absolutely no reason for approaching the defendant.
Brown requires us to consider the purpose and flagrancy of the official misconduct. Brown, 422 U.S. at 603, 95 S.Ct. 2254. The majority states that, "even if the Terry stop exceeded the officers' authority, the police conduct was not particularly egregious and did not amount to a flagrant abuse of police power." It is shocking to think that the officers' conduct in this case could be characterized as anything but a flagrant abuse of power. The officers detained and frisked the defendant solely because they were on a "pro active patrol" in an area in which the police department had a general tip of narcotics activity.
The state has exploited a completely illegal stop in order to aid in the prosecution of this case. Police officers must not be allowed to randomly stop and search individuals without reasonable suspicion. We must return to the standard set out in Terry v. Ohio. By allowing this contraband to be admitted into evidence, this court condones the egregious conduct of these police officers.
For the reasons expressed above, I would affirm the holdings of the trial court and the court of appeal. I would hold that the crack pipe found on the defendant's person is inadmissible pursuant to the "fruit of the poisonous tree" doctrine because the police officers did not have reasonable suspicion for the stop, and the evidence was discovered during an illegal search.
NOTES
[*] VICTORY, J. Not on panel. See Rule IV, Part 2, Section 3.
[1] The trial court also ruled that the bill of information failed to state probable cause to charge Timmie Hill with intentional possession of cocaine. As this portion of the ruling was not raised or argued in the court of appeal we will not pass on this issue. La.C.C.P. art. 2129; Rule 2-12.4, Uniform Rules-Courts of Appeal; Rule VII, Section 4(3)-Supreme Court Rules.
[2] Art. 703. Motion to suppress evidence

A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. La.C.Cr.P. Art. 703(A)
[3] The first exception is the "independent source doctrine" wherein the same evidence was equally discoverable from an "independent source." Segura v. United States, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). The second is called the "inevitable discovery" rule, which "comes into play when the pertinent evidence is the product of illegal government activity and would have been discovered inevitably by lawful means without regard to the illegality." State v. Franklin, 686 So.2d 38, 41 (La.1997) citing Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The third was first articulated by the United States Supreme Court in Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), and is called the "attenuation doctrine," wherein the connection between the unlawful police conduct and the challenged evidence has "become so attenuated as to dissipate the taint." State v. Jenkins, 340 So.2d 157, 175 (La.1976); See also United States v. Turk, 526 F.2d 654, 661 (5th Cir.1976) ("the doctrine of attenuation permits the introduction of evidence which bears only a very indirect relation to the illegal search.").
[4] In Brown, police officers broke into the defendant's apartment, searched it, and arrested the defendant, all without probable cause or a warrant. Id. at 422 U.S. at 593, 95 S.Ct. at 2256, 45 L.Ed.2d at 420. After a twenty minute ride to the police station and a few minutes alone in an interrogation room, the defendant was given Miranda warnings and gave a signed inculpatory statement. Id. at 422 U.S. at 593, 95 S.Ct. at 2257, 45 L.Ed.2d at 421. Some hours later, the defendant was again given his Miranda warnings after which he gave a second inculpatory statement. Brown, 422 U.S. at 595, 95 S.Ct. at 2257, 45 L.Ed.2d at 422. Although it found that the Miranda warnings given to the defendant were an important factor to consider, the Court stated that "no single fact is dispositive" in determining whether or not the statements should be suppressed. Brown, 422 U.S. at 603, 95 S.Ct. at 2261, 45 L.Ed.2d at 427. Instead, the Court first looked to the distinct policies and interests of the Fourth Amendment as enunciated in Wong Sun. Brown, 422 U.S. at 602, 95 S.Ct. at 2261, 45 L.Ed.2d at 426. Rejecting a "but for" test, the Court held the proper analysis involves a multi-factored test allowing each case to be decided on its particular facts. Brown, 422 U.S. at 603, 95 S.Ct. at 2261, 45 L.Ed.2d at 427 citing Wong Sun v. United States, 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455. "The temporal proximity of the arrest and the confession, the existence of intervening circumstances, and, particularly the purpose and flagrancy of the official misconduct are all relevant." Id. See also State v. Scott, 389 So.2d 1285, 1288 (La.1980).
[5] La.C.Cr.P. art. 213 provides in pertinent part:

A peace officer may, without a warrant, arrest a person when:
(4) The peace officer has received positive and reliable information that another peace officer ... holds an arrest warrant for a felony offense.
[6] In a different case, the Colorado Supreme Court found that the discovery of a warrant did not rise to the level of an intervening circumstance and questioned its holding in Hillyard. People v. Padgett, 932 P.2d 810 (Co.1997). However, Padgett is distinguishable on its facts from Hillyard and Green, because in that case, after an initially impermissible stop, a computer returned a "Code 6-F" or an "unconfirmed" warrant on the defendant. The officer then conducted a frisk for weapons discovering several bricks of marijuana, and arrested Padgett. Afterwards the officer received confirmation on the outstanding warrant. The stop, frisk, and arrest all occurred prior to the officer's receipt of confirmation on the warrant. The court found that since the evidence at issue, the bricks of marijuana, were seized in the initial impermissible stop and frisk, and prior to the receipt of confirmation on the warrant, the warrant could not constitute an intervening circumstance. Therefore, the subsequent discovery of the reliable information that a warrant was outstanding for the defendant did not create an intervening circumstance that attenuated the taint of the initial impermissible stop and frisk. Padgett, 932 P.2d at 817.
[1] Decisions in immigration cases have held that the identity of an accused is not suppressible as the fruit of an unlawful detention. See, e.g., INS v. Lopez-Mendoza, 468 U.S. 1032, 1039-40, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). Because special rules regarding searches and seizures are applied in immigration cases, I hesitate to base the suppression decision in this case on the legality or illegality of the seizure of defendant's name after the unlawful initial stop.