767 So.2d 116 (2000)
STATE of Louisiana
v.
Arthur A. AICKLEN, Jr.
No. 2000-K-1181.
Court of Appeal of Louisiana, Fourth Circuit.
June 14, 2000.
*117 Kenneth P. Bordelon, Robert J. Daigre, Adam Weems, Law Clerk, Courtenay, Forstall, Hunter & Fontana, New Orleans, LA, Counsel for Relator.
Court composed of Judge WILLIAM H. BYRNES, III, Judge MIRIAM G. WALTZER, and PHILIP C. CIACCIO, Judge Pro Tem.
BYRNES, Judge.
We grant the defendant, Arthur A. Aicklen, Jr.'s writ application to review the trial court's ruling denying the defendant's motion to suppress. We affirm the trial court's ruling and deny the defendant's motion for a stay order.

STATEMENT OF THE CASE
On March 20, 2000 the State filed a bill of information charging the defendant with one count of possession of cocaine. The defendant entered a not guilty plea on April 13, 2000. On May 11, 2000 the trial court denied the defendant's motion to suppress evidence. The defendant objected and gave notice of intent to seek writs. The trial court set a return date of May 25, 2000 and a trial date of June 29, 2000. This timely writ application followed. Although the defendant has asked this Court to stay the trial, there is no indication that a stay has been requested from the trial court.

STATEMENT OF THE FACTS
At the hearing on the defendant's motion to suppress, Officer Mike Richard testified that he arrested the defendant on October 29, 1999. The incident arose when the officer responded to a call for service because two people were fighting in a residence. When the officer arrived at the scene, he spoke to the defendant's father. Mr. Aicklen, Sr. told the police that he and his son had argued over the defendant's failure to have done work on a house that the two were renovating. At some point in the argument, the defendant told his father that he was "going to get a gun" and go to Mississippi. The defendant then went downstairs to his apartment. The defendant's father interpreted his son's statements as a suicide threat, so he called the police.
Mr. Aicklen, Sr. provided the police with a key to his son's downstairs apartment. The officers entered the apartment and saw the defendant sitting on the bed with a revolver on the nightstand next to him. The officers took the defendant into custody. One of the officers present, Sergeant Sheuremann, confiscated the handgun and found it to be unloaded. The bullets were *118 on the nightstand. Next to the gun and bullets was "a little PVC pipe with mesh wire" containing a residue. The officers immediately recognized this as a crack pipe. The defendant's arrest for possession of cocaine followed.
During cross-examination, Officer Richard testified that Mr. Aicklen, Sr. never told the officers that the defendant had threatened him with a weapon or physically assaulted him in any way. Thus, the only crime was the "argument between father and son." The officer admitted that the defendant was taken into custody as soon as the officers entered and told the defendant to come over to them Officer Richard explained that he meant the defendant was placed in handcuffs when he stated that the defendant was taken into custody. The officer then stated, however, that the defendant was not arrested and only detained because they did not know if the defendant was "carrying or concealing any other weapons on his person." The officer further admitted that there is nothing illegal about possessing a weapon in one's home, that Mr. Aicklen, Sr. made no complaints against his son, and that the crack pipe was not discovered until after the defendant had been handcuffed.
The defendant-relator is before this Court arguing that he was arrested when he was handcuffed, that there was no probable cause for the arrest, and therefore, any evidence seized subsequent to the unlawful arrest is inadmissible.
The relator admits in his writ application that it could be argued that the police were allowed entry to the defendant's apartment because of concerns for his safety. Courts have recognized as an exception to the warrant requirement a quick search of the premises to determine the presence of a perpetrator or persons in need of aid.
In Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984), the defendant killed her husband, attempted to commit suicide, and then called her daughter in an attempt to get medical help. The daughter called the police, and the police entered the house. After the defendant was taken to a hospital, the officers remained in the house and searched it without a warrant, finding incriminating evidence. The Louisiana Supreme Court upheld the search, but the United States Supreme Court reversed, explicitly holding that there was no "murder scene" exception to the warrant requirement. The Court recognized, however, a limited exception to the warrant requirement which permits police officers to enter a building without a warrant if the officers reasonably believe the building contains people in need of assistance or that the perpetrator is still on the premises. The Court found the extended search, which occurred after the defendant had been taken to a hospital, exceeded the scope of this exception.
In State v. Brady, 569 So.2d 110 (La. App. 4 Cir.1990), rev'd in part on other grounds, 585 So.2d 524 (La.1991), the defendant was convicted of stabbing her husband. She directed a neighbor to call the police to inform them of a stabbing, and when the officers arrived, she told them the victim had been stabbed elsewhere and had collapsed and died at home. The position of the body and the lack of a blood trail from the door to the victim's body, however, disproved this story, and the officers searched the residence and found incriminating evidence. On review, this court held that the officers' entry was valid, due to the defendant's consent. This court also found that the further search was justified because the defendant's story did not match the evidence, and the officers were justified in moving into the other rooms to determine if the perpetrator was still in the residence or if there were any other victims.
In State v. Perry, 502 So.2d 543 (La. 1986), cert. denied sub nom. Perry v. Louisiana, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987), the defendant was convicted of killing family members in two *119 separate houses. The officers entered one of the houses when they saw what appeared to be particles of bones and flesh in the carport, and they had already discovered bodies of other victims in the other residence. The United States Supreme Court upheld the warrantless entry into the second house under the "persons in need of aid" exception to the warrant requirement.
In Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), the defendant killed a policeman during a raid of the defendant's apartment. After the defendant was arrested and taken away, the officers conducted a three-day search of the apartment. On review, the United States Supreme Court suppressed the evidence. Although the Court recognized the validity of the officers' entry into the apartment to render immediate aid or apprehend the perpetrator, it found the continued search exceeded the scope of this limited entry.
In the present case, Officer Richard testified that the police entered the defendant's apartment with a key provided by his father after Mr. Aicklen, Sr. had informed the officers that he believed his son was suicidal and had indicated that he intended to get a gun. This testimony, which was not contradicted at the hearing, appears to fall clearly within an exception to the requirement of a search warrant to enter the residence.
Once lawfully inside the apartment, the officers saw the crack pipe in plain sight on the nightstand when they retrieved the gun to see if it was loaded. Retrieval of the gun in these circumstances was obviously necessary for the safety of the officers and for the defendant who had been reported to them to be suicidal. Thus, the officers could seize the crack pipe under the plain view doctrine. This warrant exception permits the police who are lawfully in a position from which they view an object to seize it without a warrant, if the object's incriminating character is immediately apparent and if they have a lawful right of access to the object. State v. Smith, 96-2161, p. 3 (La.App. 4 Cir. 6/3/98), 715 So.2d 547, 549.
In the present case the defendant argues that he had committed no crime at the time the officers took him into physical custody by handcuffing him and that the act of handcuffing the defendant was an arrest. However, the officers' actions of handcuffing the defendant had no bearing on their observations of the crack pipe sitting in plain view on the nightstand next to the gun and bullets; therefore, under State v. Hill, 97-2551 (La.11/6/98), 725 So.2d 1282, the trial court correctly denied the defendant's motion to suppress the evidence. In Hill the trial court suppressed evidence seized after the defendant was arrested pursuant to an outstanding warrant. The warrant was discovered after the police ran the defendant's name which they obtained during an investigatory stop which was not based on a reasonable suspicion of criminal conduct. This Court affirmed the trial court, finding that the arrest could not be valid unless the initial stop was valid. State v. Hill, 97-1012 (La. App. 4 Cir. 9/17/97), p. 2, 700 So.2d 551, 552. The Louisiana Supreme Court reversed. The Supreme Court found that the defendant's arrest pursuant to a valid warrant was sufficiently attenuated from the initial stop to fall within an exception to the fruit of the poisonous tree doctrine. The court reviewed jurisprudence from the United States Supreme Court, particularly Brown v. Illinois, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 427 (1975), in which the court enunciated a multi-factor test to consider whether evidence impermissibly seized should be suppressed. The court noted:
The primary considerations under Brown are: (1) the temporal proximity of the illegality and the acquisition of the evidence to which instant objection is made; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *120 Brown, 422 U.S. at 603, 95 S.Ct. at 2262, 45 L.Ed.2d at 427; State v. Scott, 389 So.2d at 1288. (FN 4) Additionally, in considering whether the evidence should be suppressed, Brown requires us to weigh each consideration in light of the policies behind the Fourth Amendment. [Footnote omitted.]

Hill, supra. 3-4, 725 So.2d at 1284.
The Louisiana Supreme Court then applied the Brown factors, conceding that while there was no temporal break, the computer check which showed the outstanding arrest warrant was an intervening circumstance sufficient to dissipate the taint of the initial impermissible stop. The court specifically rejected a "but for" causation test which would find the evidence inadmissible because the police learned the defendant's name only during the illegal stop. The court also analyzed the last factor under Brown, the flagrancy of the police misconduct. The court stated:
... To this end, we note that the testimony of officers Elsensohn and McCabe at the suppression hearing did not reveal a "quality of purposefulness" in their conduct, which consisted of performing a Terry stop and frisk on an unknown individual whom they observed standing about on a street corner; nor is there any indication that the officers' conduct was "calculated to cause surprise, fright, or confusion." Brown, 422 U.S. at 605, 95 S.Ct. at 2262, 45 L.Ed.2d at 428. Thus, even if the Terry stop exceeded the officers' authority, the police conduct was not particularly egregious and did not amount to a flagrant abuse of police power. To the contrary, under the particular facts of this case, we ... find that, once the officers knew of the outstanding arrest warrants, they would have been derelict in their duty not to arrest the defendant. The officers' conduct in this case does not rise to the level of flagrant misconduct within the meaning of the jurisprudence, yet the gravity of the government's interest in apprehending wanted individuals is overpowering. Because the exclusionary rule is designed to prevent the use of evidence tainted by flagrant police misconduct in order to deter law enforcement practices violative of the Fourth Amendment, we find that considering the circumstances of this case, suppression of the disputed evidence would not serve the policies behind the exclusionary rule, nor contravene the protections provided by the Fourth Amendment.

Hill, pp. 9-10, 725 So.2d at 1287.
In the present case, the police officers were acting solely because the defendant's father, who gave them the key to enter the defendant's apartment, informed the officers that he believed his son was contemplating suicide and had specifically threatened to obtain a gun. There is nothing to indicate that the officers were attempting to circumvent the Fourth Amendment or engage in any misconduct. When the officers entered the apartment, they saw the gun on the nightstand next to the defendant. The discovery of the crack pipe in plain view next to the gun appears sufficiently attenuated from the physical custody of the defendant. Further, the police were called concerning an argument between the father and the defendant/son, where the father thought that the son might be suicidal and the son had expressed that he was going to Mississippi. Under the totality of circumstances, it was not unreasonable for the police to handcuff the defendant who was next to the gun whether or not they had probable cause to arrest him. This measure would have prevented the defendant from reaching for a weapon if there were another one in the bedroom, and prevented the defendant from trying to flee.
Accordingly, the trial court's ruling denying the defendant's motion to suppress the evidence is affirmed, and the defendant's motion for a stay order is denied.
*121 WRIT GRANTED; RELIEF DENIED; & STAY ORDER DENIED.