^ARMSTRONG, Judge.
We grant the State’s application for supervisory writs to consider the correctness of the trial court’s ruling granting the defendant’s motion to suppress the evidence.
On January 18, 2001, the defendant was charged with one count of simple possession of cocaine a charge to which he pled not guilty. The defendant subsequently filed a motion to suppress the evidence. The trial court, after a hearing, granted the motion.[1]
On December 31, 2000, a police officer on routine patrol observed the defendant, Raul Marin, flagging down pedestrians at the corner of Thalia and Simon Bolivar. When the defendant saw the officer’s car approaching, he put down his arm and began walking away from the officer. The officer stopped to watch the defendant for a while, and then he began following the defendant. The officer testified that the defendant kept looking back at the officer. The officer then stopped the defendant to conduct a field interview. The defendant told the officer his name, but he was carrying no identification. The officer testified he Rasked the defendant a series of questions, and the defendant could not give a good reason why he was in the area. Another officer arrived, and the initial officer ran the defendant’s name through the computer and found there was an outstanding warrant for his arrest. After establishing that the warrant was still in effect, the officers arrested the defendant. One of the officers searched the defendant and discovered a matchbox containing eight pieces of a white compressed substance. The officer also found a glass tube. The officers then advised the defendant of his rights and transported him to Central Lockup.
On cross-examination, the officer admitted he had received no complaints concerning the defendant or the area. He testified that he did not start to follow the defendant until the defendant continued to look behind him as he walked away from the officer. He stated the defendant was free to go when he initially stopped him, but he admitted he would have found it *896 suspicious if the defendant had done so. He also admitted he frisked the defendant when he stopped him, but apparently he found no contraband as a result of the frisk.
The State contends the trial court erred by suppressing the evidence. The State bases its contention on two arguments: (1) the officer had reasonable suspicion to stop the defendant; and (2) even if the officer did not have reasonable suspicion for the stop, the arrest and subsequent seizure of the evidence was authorized pursuant to State v. Hill, 97-2551 (La.11/6/98), 725 So.2d 1282. The State’s second argument has merit.
It is not clear that the evidence supports a finding of reasonable suspicion to support the investigatory stop. However, as per Hill, the validity of the initial stop is irrelevant because the cocaine was discovered after the officers arrested him on the outstanding arrest warrant. In Hill, the Court ruled that even though the 1¡¡officers may not have had reasonable suspicion to stop the defendant, once the officers discovered there were outstanding warrants issued for his arrest, the officers could arrest him and lawfully seize any evidence found in a search incident to that arrest. The officers were on patrol in an area about which they had received a general tip of narcotics activity. The officers saw Hill and his companion standing in front of an abandoned house, and as the men saw the officers, they began to walk away. The officers stopped the men and frisked them, finding nothing. They then ran the men’s names and discovered there were outstanding arrest warrants for Hill. The officers arrested Hill, searched him incident to the arrest, and discovered a crack pipe. The trial court granted Hill’s motion to suppress the evidence. On writs, this Court affirmed the trial court’s ruling, finding that the initial stop was unlawful and that the discovery of the outstanding warrants was a product of the illegal stop. State v. Hill, 97-1012 (La.App. 4 Cir. 9/17/97), 700 So.2d 551.
The State took writs, and the Supreme Court reversed. The Court found that even if the initial stop was illegal, the “attenuation doctrine” exception to the exclusionary rule applied in this case. The Court stated:
The primary purpose of the exclusionary rule is to deter future impermissible police conduct. The rule, which requires the exclusion of evidence gained through impermissible official conduct, is designed to deter unconstitutional methods of law enforcement. Louisiana has codified this jurisprudential doctrine in Louisiana Code of Criminal Procedure Article 703(A) which provides that a defendant, adversely affected by unconstitutional police misconduct may move to suppress any evidence on the grounds that it was unconstitutionally obtained, [footnote omitted] However, there are several well-settled judicial doctrines that supply exceptions to the exclusionary rule. If one of these doctrines is applicable, evidence seized following official misconduct may not require suppression. These Lthree jurisprudentially created doctrines which prevent the suppression of evidence are: (1) the independent source doctrine, (2) the inevitable discovery doctrine, and (3) the attenuation doctrine. [footnote omitted] Wong Sun v. U.S., 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963); U.S. v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); State v. Welch, 449 So.2d 468 (La.1984); State v. Guy, 575 So.2d 429 (La.App. 4 Cir.1991), writ denied 578 So.2d 930 (La.1991). Because we find that the attenuation *897 doctrine provides an exception to the exclusionary rule in this case, we need not address the other doctrines.
In Brown v. Illinois, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 427 (1975), the United States Supreme Court enunciated the multi-factor test presently used to consider whether evidence impermissibly seized should be suppressed. The primary considerations under Brown are: (1) the temporal proximity of the illegality and the acquisition of the evidence to which instant objection is made; (2) the presence of intervening circumstances; and (3) the purpose and fiagrancy of the official misconduct. Brown, 422 U.S. at 603, 95 S.Ct. at 2262, 45 L.Ed.2d at 427; State v. Scott, 389 So.2d at 1288. [footnote omitted] Additionally, in considering whether the evidence should be suppressed, Brown requires us to weigh each consideration in light of the policies behind the Fourth Amendment.
Hill, 97-2551 at. pp. 2-4, 725 So.2d at 1283-1284. The Court noted that although it appeared there may have been a “temporal proximity” between the initial stop, the discovery of the outstanding warrants was an intervening circumstance which dissipated the “taint of an initial impermissible encounter.” Hill at p. 5, 725 So.2d at 1285. The Court analyzed cases from other jurisdictions and concluded that the existence of the outstanding warrants was an intervening circumstance which gave the officers a basis for the arrest which led to the discovery of the crack pipe. The Court concluded:
Because we find an intervening circumstance under Brown, we need not decide whether the fourth 1 .¡circuit was correct in holding that the officers lacked reasonable suspicion for the initial Terry stop and frisk of the defendant because, assuming arguendo that the NOPD officers did conduct an impermissible Terry stop, no evidence was recovered during that search; rather, the evidence was not seized until after the officers discovered the two outstanding arrest warrants, arrested the defendant, and conducted a lawful search incident to his arrest on the outstanding warrants. The officers’ [sic] did not arrest and search the defendant due to exploitation of the initial Terry stop or due to any evidence gained through the exploitation of the initial stop. Instead, the officers lawfully arrested the defendant pursuant to the outstanding arrest warrants under La. C.Cr.P.art. 213. The interim discovery of the existence of the two outstanding arrest warrants provided the sole basis for the defendant’s arrest and constituted an intervening circumstance under the third consideration of Brown.
Hill, at p. 8, 725 So.2d at 1286-1287 [emphasis added]. The Court in Hill took pains to note that the contraband was not discovered pursuant to any illegal activity by the officers, but rather it was discovered after the officers arrested the defendant on his outstanding warrants.
Likewise, in State v. Perez, 99-2063 (La.App. 4 Cir. 9/15/99), 744 So.2d 173, this Court found the initial stop was illegal, but it specifically upheld the seizure of the contraband because the contraband was not seized until long after the officers learned of the outstanding warrants. This Court stated:
The instant case resembles Hill quite closely. The officers did not conduct a search immediately following the traffic stop. They did not exploit the fact that the computer showed a warrant for defendant; according to defendant’s statement, the officers kept him at the scene until they had confirmed that the warrant was still valid. The recovered co *898 caine was found in the police car at Central Lockup, where the defendant had been transferred following the legal arrest. Accordingly, we hold that the computer check of defendant’s identity dissipated the taint of the wrongful stop, allowing the officers to arrest defendant lawfully; and the trial court |r,erred in holding that the cocaine was the fruit of an unlawful seizure.
State v. Perez, 99-2063 at p. 7, 744 So.2d at 177.
Here, as in Hill and Perez, it appears the officers may not have had reasonable suspicion to detain the defendant. However, once he identified himself and they established there was an outstanding warrant for his arrest, they could arrest him pursuant to the warrant and search him incident to the arrest. The evidence was not discovered until after he had been arrested on the warrant. Therefore, even if the initial stop was flawed due to a lack of reasonable suspicion, as per Hill the officers could lawfully arrest the defendant on the outstanding warrant and lawfully seize the contraband incident to the arrest on the warrant. The trial court erred by granting the motion to suppress the evidence.
For the foregoing reasons, the writ is hereby granted and the trial court’s ruling granting the motion to suppress is reversed and remanded for trial.

WRIT GRANTED; REVERSED AND REMANDED.

. This court delayed decision on this writ application to allow defendant's counsel an extension of time within which to file a response to the State’s application.