hPEATROSS, J.
Defendants, Darrell L. McCoy and Michael LeDean Carter, pled guilty to possession of marijuana with intent to distribute, reserving their right to appeal the trial court’s ruling on a previously filed motion to suppress. See State v. Crosby, 338 So.2d 584 (La.1976). They now appeal, arguing that the trial court erred in not suppressing the discovered marijuana. For the reasons stated herein, we affirm.
FACTS
On November 1, 2000, a trooper with the Louisiana State Police named Kevin Brown (“Trooper Brown”) observed a Ford Explorer and a Dodge van parked in the parking lot of a “rest area” located next to 1-20 in Bossier Parish, Louisiana. He then observed a male and female walking from the restrooms towards the parked vehicles. Trooper Brown became suspicious when the male and female, upon noticing him, hurried towards the parked vehicles. Trooper Brown continued to watch the male and female and he saw that they met another male and female at the parked vehicles. As he drove by, the four people quickly got into the two vehicles and left, driving eastbound toward Webster Parish. Trooper Brown could not see a license plate on the Ford Explorer, so he stopped the vehicle.
Upon approaching the vehicle, Trooper Brown saw a temporary license plate on the inside of a tinted window, but continued to investigate because it was handwritten and was not numbered. Ms. Flora D. Norman was the driver and Darrell McCoy was the passenger. Trooper Brown explained why he stopped the vehicle and asked Ms. Norman for the vehicle’s registration, but she could not find it. She first stated that she did hnot know who owned the vehicle and then stated that Mr. McCoy was the owner. Mr. McCoy stated that one of his relatives owned the vehicle; however, after searching through the glove compartment, he produced a handwritten sales receipt that indicated he was the owner.
Ms. Norman’s and Mr. McCoy’s drivers’ licenses revealed that they were residents of California. They stated that they were traveling with the people who were in the Dodge van and that they were going to a family reunion in Mississippi, but gave conflicting information as to which city. Trooper Brown noticed that Ms. Norman and Mr. McCoy were unusually nervous and suspected that they were involved in some type of criminal activity.
Trooper Brown then called the Webster Parish Sheriffs Department on his radio and requested that they stop the Dodge van, as he thought that they all fit the profiles of drug couriers. Next, he asked Ms. Norman if he could search the Ford Explorer because he did not have a warrant. She consented and signed a “Louisiana State Police Consent to Search” form. Two other state troopers arrived at the scene to assist Trooper Brown. During the search, two airline tickets were discovered, showing that Ms. Norman and Mr. McCoy had recently flown from Sacramento, California to El Paso, Texas. Additionally, canines were brought to the scene and they alerted, but Trooper Brown found no drugs at that time.[1]
*424 Officers for the Webster Parish Sheriffs Department and Minden Police Department stopped the Dodge van, and another state trooper, |3Pon Campbell, arrived on the scene and took control of the investigation. Michael Carter was the driver of the Dodge van and Alicia Meadows was the passenger. Trooper Campbell asked Mr. Carter if he could ask some questions and Mr. Carter, very nervously, answered in the affirmative. In response to some of Trooper Campbell’s questions, Mr. Carter stated that he and Ms. Meadows had recently flown from Sacramento, California to El Paso, Texas, that he borrowed the van from a friend, that he and Ms. Meadows were going to a family reunion in Mississippi and that they were not traveling with anyone else. A short time later, however, he stated that they were traveling with Ms. Norman and Mr. McCoy. Further, Mr.' Carter would not make eye contact with Trooper Campbell and continuously looked at the ground.
Trooper Campbell became suspicious that Mr. Carter and Ms. Meadows were involved in some type of criminal activity and asked Mr. Carter if he could search the Dodge van because he did not have a warrant. Mr. Carter answered in the affirmative and signed a “Louisiana State Police Consent to Search” form. As Trooper Campbell began his search, a traffic accident occurred in the west-bound lane across from them. For safety reasons, Trooper Campbell asked Mr. Carter if he would follow him to the parking lot of the Webster Parish Sheriffs Department so that the search could be completed. Mr. Carter then voluntarily followed Trooper Campbell to the Sheriffs Department. Upon learning that the Dodge van was going to the Sheriffs Department, Trooper Brown also asked |4Ms. Norman to follow him to the parking lot of the Webster Parish Sheriffs Department and she did so voluntarily.
When the searches resumed at the Webster Parish Sheriffs Department, the canines alerted again. A fiber optic scope was used to reveal metal boxes in the gas tanks of the Ford Explorer and Dodge van. The gas. tanks were disassembled and approximately 88.8 pounds of marijuana was discovered in the gas tank of the Dodge van and approximately 62.8 pounds of marijuana was discovered in the gas tank of the Ford Explorer.
Mr. Carter, Mr. McCoy, Ms. Meadows and Ms. Norman were arrested and charged with possession of marijuana with intent to distribute, in violation of La. R.S. 40:964, and conspiracy to possess with intent to distribute, in violation of La. R.S. 40:979.[2] Defendants pled not guilty and filed motions to suppress the marijuana, but the trial court denied the motions. Based on the denial of the motions to suppress, Defendants entered pleas of guilty to possession of marijuana; and, as previously stated, pursuant to Crosby, supra, they reserved their rights to appeal the denial of the motions to suppress.
DISCUSSION
Defendants argue that the initial detention of the Ford Explorer and Dodge van were unconstitutional because the police had no reasonable suspicion that Defendants were involved in any criminal activity. “A law enforcement officer may stop a person in a public place whom he ^reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address and an explanation of his actions.” *425 La.C.Cr. P. art. 215.1. Defendants further argue that their motion to suppress the discovered marijuana should have been sustained by the trial court because the discovered marijuana was the product of an unconstitutional stop. “A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.” La.C.Cr. P. art. 703(A).
Initially we make a finding that it is unnecessary to discuss the propriety of the initial stops of either vehicle because the federal and Louisiana jurisprudence provides an exception to La.C.Cr. P. art. 703(A) known as the “attenuation doctrine,” where the connection between the initial unconstitutional detention and the discovered evidence have “become so attenuated as to dissipate the taint.” State v. Hill, 97-2551 (La.11/6/98), 725 So.2d 1282; State v. Jenkins, 340 So.2d 157 (La.1976). Even if the initial stop was unconstitutional, we find, based on the following discussion, that the trial court was correct in denying Defendants’ motions to suppress.
A search conducted pursuant to a valid consent is permitted by both the Louisiana and United States Constitutions. State v. Raheem, 464 So.2d 293 (La.1985); State v. Crews, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082. Such searches are recognized exceptions to the warrant requirements. State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, cert denied, Edwards v. Louisiana, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). If a consent to search is obtained after an unconstitutional | ^detention, it is valid only if it was the product of free will and not the result of an exploitation of the previous illegality. State v. Owen, 453 So.2d 1202 (La.1984).
The test utilized in determining whether or not a search was due to the exploitation of a previous illegality was set out in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), as follows: (1) the temporal proximity of the illegality and the acquisition of the evidence to which the objection is made; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. No single fact, however, is dispositive in determining whether or not the evidence should be suppressed. Brown, supra; Hill, supra.
The time span between the initial detention and the discovery of the marijuana was not unreasonably long. Trooper Campbell, because of the traffic accident, was justified in asking Mr. Carter follow him to the Minden Sheriffs Department so that the search could be conducted in a safer area. Trooper Brown was also justified in asking Ms. Norman to follow him to the Minden Sheriffs Department because he knew that she and Mr. McCoy were traveling with Mr. Carter and that Mr. Carter was following Trooper Campbell to the Minden Sheriffs Department. Since an unreasonable amount of time did not elapse between the alleged illegal stop and the discovery of the marijuana, this factor would appear to weigh against attenuation. But, as stated previously, no single factor is dispositive.
We next discuss the presence of intervening circumstances. The supreme court has held that a valid consent to search is an intervening | ^circumstance. See State v. Cox, 330 So.2d 284 (La.1975). The next issue presented, therefore, is whether the consent in the case sub judice was the product of free will rather than an exploitation of the alleged illegality. Defendants cite State v. Bargeman, 98-617 (La.App. 3d Cir.10/28/98), 721 So.2d 964, writ denied 96-0033 (La.5/28/99), 743 So.2d 658, to sup *426 port their argument that a consent to search does not purge the taint of an illegal stop. Their reliance on that case, however, is misplaced. The defendants in that case were ordered by the police to not move their car and the court found that the defendants were not free to leave the scene after their initial stop and the consents to search were not voluntary.
In the case sub judice, however, there was no finding by the trial court that Defendants were not free to leave. Additionally, Troopers Brown and Campbell asked Ms. Norman and Mr. Carter if they could search the Ford Explorer and Dodge van. Ms. Norman and Mr. Carter verbally consented to the searches and each signed a “Louisiana State Police Consent to Search” form. The form states the following:
I ... voluntarily authorize [Troopers Brown and Campbell] ... to search.... No promise, threat, or coercion of any kind has been made against me by the Louisiana Office of State Police and I have been informed by the above named State Police officer [Brown and Campbell] that I may refuse to consent to any search and that I may revoke my consent to search at any time.
Ms. Norman and Mr. Carter also voluntarily followed the troopers to the Webster Parish Sheriffs Department. We conclude, therefore, that the state proved that the consents to search were both voluntary and the result of the free will of the persons in control of the vehicles.
 [sThe consents to search, however, were not the only intervening factors. The fact that the canine alerted on the Ford Explorer provided Trooper Brown with probable cause that the vehicle contained illegal drugs. Based on the foregoing intervening factors, we find that the discovery of the marijuana was so attenuated from the assumed illegality that any potential taint was purged.
We next consider the purpose and flagrancy of any alleged police misconduct. Trooper Brown initially observed all the occupants of the Ford Explorer and Dodge van leave the rest area in a hurried manner upon seeing him. He stopped the Ford Explorer because there was not a visible license plate, but as he approached the Ford Explorer, he did see a temporary tag in the window. Since it was handwritten and not numbered, it was reasonable for him to continue investigating to determine whether or not the vehicle was stolen. Upon questioning the occupants of the vehicle, he observed that they were both nervous and gave conflicting stories about their destinations. Trooper Brown further testified that, based on his experience and training, he thought the occupants of the Ford Explorer and Dodge van fit the profiles of drug couriers. Thus, even if the initial stops of the Ford Explorer and Dodge van exceeded the Troopers’ authority, we find that their conduct was not a flagrant abuse of police power.
In summary, we reiterate that we find it unnecessary to discuss the propriety of the initial stops of Defendants because of the valid consents to search and absence of abuse of police power. We agree with the decision of the trial court denying Defendants’ motions to suppress and find that the ladiscovery of the marijuana was so attenuated from the initial stop that any potential taint was purged.
CONCLUSION
For the foregoing reasons, the convictions and sentences of Michael LeDean Carter and Darrell L. McCoy are affirmed.
AFFIRMED.

. "Alert,” in this context, is a verb used to describe the acts of a canine when it senses *424 illegal drugs.

. All four cases were consolidated, but Ms. Meadows and Ms. Norman did not appeal.