# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17- 580


**STATE OF LOUISIANA**

**VERSUS**

**DAVID RAY NEWSOM**


\*\*\*\*\*\*\*\*\*\*

SUPERVISORY WRIT FROM THE THIRTY-FIRST JUDICIAL
DISTRICT COURT, PARISH OF JEFFERSON DAVIS,
DISTRICT COURT DOCKET NO. CR-367-16
HONORABLE STEVE GUNNELL, JUDGE


\*\*\*\*\*\*\*\*\*\*

## JOHN E. CONERY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Shannon J. Gremillion, and John E. Conery, Judges.


Gremillion, J., dissents and assign written reasons.


**WRIT GRANTED AND MADE PEREMPTORY.**

**Adam P. Johnson**
**The Johnson Firm**
**910 Ford Street**
**P. O. Box 849**
**Lake Charles, Louisiana  70602**
**(337) 433-1414**
**COUNSEL FOR DEFENDANT/APPLICANT:**
 **David Newsom**

**Bennett R. LaPoint**
**Assistant District Attorney**
**P. O. Box 1388**
**Jennings, Louisiana  70546**
**(337) 824-1893**
**COUNSEL FOR RESPONDENT:**
 **State of Louisiana**

**CONERY, Judge.**

This is a pre-trial writ filed by the State of Louisiana. Trial is currently scheduled for September 14, 2017.

Defendant was arraigned on August 8, 2016, for operating a vehicle while intoxicated, a violation of La.R.S. 14:98. On November 17, 2016, Defendant filed a "Motion to Suppress Evidence," a "Supplemental Motion to Suppress Evidence with Incorporated Memorandum," and a "Notice of Objection to the Introduction of the State's Crime Lab Certificates into Evidence as Prima Facie Proof of the Assertions Contained Therein." Hearings were held on May 11 and 15, 2017, to address all the issues raised in the above three pleadings. The trial court granted Defendant's motions to suppress the blood/alcohol results and the statements made by defendant to the investigating Louisiana state troopers.

The State of Louisiana now seeks review of the trial court's rulings. The issues raised are whether Defendant's verbal consent for the blood/alcohol test was valid and whether the statements were freely and voluntarily made. For the following reasons, we find that the trial court erred when it granted Defendant's motions to suppress the evidence. Accordingly, this court grants and makes peremptory the State's writ, vacates the trial court's ruling, and remands the matter for further proceedings.

## FACTS

On May 6, 2016, Defendant was involved in a single vehicle accident in Jefferson Davis Parish. He was injured and subsequently taken by a medical helicopter to a hospital in Lafayette. At the hospital, Defendant gave statements to Louisiana State Trooper John Sims. Defendant also consented to a blood/alcohol test that showed he was over the legal limit. Defendant was arrested and charged with operating a vehicle while intoxicated.

**EVIDENCE ADDUCED AT MAY 11, 2017 MOTION HEARING**

John Sims and Scott O'Connell, troopers with the Louisiana State Police, testified at the hearing, and several documents were introduced by the State and Defendant, which are attached as exhibits to the State's writ application:

State's Exhibit 1: Arrestee's Rights Form, Rights Relating to Chemical Test for Intoxication.

State's Exhibit 2: Notice to Withdraw Blood for Chemical Test for Intoxication.

State's Exhibit 3 and Defense's Exhibit 3: "Optional Test."

State's Exhibit 4: "Initial Observation" and the traffic citation.

State's Exhibits 5 and 6: Blood/alcohol test kit containing "Consent Form."

Defense's Exhibit 1: "Certificate of Arrest."

Defense's Exhibit 2: "Certificate of Authenticity" and the ambulance service records.

Trooper Sims testified that he was requested by Trooper O'Connell, who remained at the scene of the accident, to go to the hospital and interview Defendant and to begin the necessary paper work. Trooper Sims stated that when he first encountered Defendant, he could smell the odor of alcohol. Defendant's eyes were bloodshot and his speech was slurred. Trooper Sims determined there was probable cause to arrest Defendant for operating a vehicle while intoxicated. The trooper testified that Defendant was conscious and coherent. Trooper Sims stated he gave Defendant the *Miranda* warnings prior to questioning him. The trooper contended that Defendant gave him verbal consent to do a blood/alcohol test and that Defendant acknowledged the *Miranda* rights he was giving up and voluntarily admitted he had three glasses of crown and coke prior to driving. The trooper

2

stated he would not have had blood drawn if Defendant had not consented but would have obtained a warrant.

Trooper Sims admitted that when he arrived at the hospital he was not advised as to the extent of Defendant's injuries. He agreed, however, that Defendant had significant injuries. He described the observable injures being to Defendant's head, face, neck, and back. He was not aware of any medications the hospital might have administered to Defendant. Although the trooper testified that he wrote in Defendant's answers to the questions on State's Exhibit 3, "Optional Test," he did not remember if he had made the note on the form that stated Defendant was incoherent. Later, however, the trooper explained that when he wrote "incoherent," he meant that while Defendant could understand the questions, he had difficulty understanding what Defendant was saying. Trooper Sims agreed that on any of the forms that required Defendant's signature, Defendant did not sign the forms. The trooper contended that although Defendant was unable to sign the forms, he gave verbal consent. When asked why Defendant could not sign the forms, the trooper responded only that Defendant was injured.

Senior Trooper O'Connell arrived at the hospital later in the morning. He testified that he spoke with Defendant and asked him to relate what occurred that caused the accident. The trooper stated that Defendant said he was driving his passenger home from a party. Trooper O'Connell said that Defendant was conscious. He noted that he could smell alcohol and that Defendant's speech was slurred, but the trooper was not sure if Defendant's bloodshot eyes were caused by alcohol or by the accident. The trooper testified that at the time he spoke with Defendant he was unaware that Defendant's face, jaw, and neck had multiple fractures or of what medication may have been given to Defendant at the hospital.

3

The State attempted to call the nurse who drew Defendant's blood for the blood/alcohol test. The State advised the trial court it desired to show that a qualified person had drawn Defendant's blood as required by La.R.S. 32:664. However, the trial court ruled that the nurse's testimony regarding her qualifications were irrelevant to a motion to suppress. The State and Defendant agreed.

Finally, Defendant submitted the EMT's report and noted for the trial court's consideration where on the EMT's record the notation was made that Defendant suffered "Altered Level of Consciousness" and that he was not able to sign the consent form for treatment because of "[n]eurological condition limits ability to sign."

On May 11, 2017, at the hearing, the trial court granted Defendant's motions to suppress the blood/alcohol results, as follows:

> I mean, the officers were - - were very honest and they stated, you know - - O'Connell didn't - - you know, he was very honest and so was Officer Sims. They were very honest in their statements, and Officer Sims said I don't remember what happened.

> But concerns the Court - - and the officers were not aware of the - - of the level of unconsciousness of the defendant at the time of the accident, okay, and that because of neurological reasons he couldn't sign, that he had injuries to the mouth and face which Officer Sims noted. Neither officer knew what medication the defendant was on at the time of the voluntary consent form. But those are all questions to me, and based on that, I - - I've got to say the consent form is not free and voluntary. This should have been a warrant from - - the judge would have signed a warrant and got the permission to draw the blood, okay, under this type of an injury, all right.

On May 15, 2017, the trial court reconvened the suppression hearing for the purpose of granting Defendant's motion to suppress the statements he made for the above stated reasons and further stated that Defendant "was mirandized prior to

giving his consent which I said was not free and voluntary. Therefore, I cannot find that he fully understood the Miranda right and that [sic] he was waiving."

## ANALYSIS

The issues before this court are whether Defendant fully understood his *Miranda* rights and therefore knowingly and intelligently waived his rights, and whether his consent for a blood/alcohol test was freely and voluntarily given. In the State's Brief in support of the writ, the State argues that the trial court erred when it granted Defendant's motions to suppress the results of the blood/alcohol test and the statements made to the two troopers as follows:

> [T]he testimonial evidence of the State Troopers prove that the defendant Newson was conscious, coherent, and able to understand waiving his rights, and give intelligent answers to all of the questions posed to him. The only evidence introduced by the defense to refute their conclusion on consent and waiver were the Acadian Ambulance records indicating that the defendant was in an "altered level of consciousness" and "alert but confused" at 01:27 hours, **approximately 3 hours before he gave Trooper Sims consent to draw blood at 03:41 hours.** There was <u>no</u> evidence introduced to prove that the defendant was unconscious or unable to give consent at the time he was met by the troopers at the hospital.

(Emphasis added.)

In his motion to suppress the blood/alcohol results, Defendant argued that the Trooper should have applied for a warrant to conduct the blood/alcohol test because of Defendant's diminished mental capacity caused by his injuries. Defendant further argued that for the same reason he did not knowingly and intelligently waive his privilege against self-incrimination. Accordingly, the statements Defendant made and the blood/alcohol test should be suppressed. Defendant repeats those arguments in opposition to the State's writ.

5

In *State v. Thomas,* 02-471, p. 3 (La.App. 3 Cir. 10/30/02), 829 So.2d 1137, 1139-40, *writ denied*, 02-2920 (La. 4/21/03), 841 So.2d 789 (citations omitted), this court discussed the trial court's ruling on a motion to suppress and stated:

> Unless the trial court's conclusions are not supported by the evidence or there exists a clear abuse of discretion, an appellate court should not overturn the trial court's ruling. In other words, the appellate court will give the trial court's determination great weight and will not set aside the trial court's ruling unless clearly mandated by a preponderance of the evidence.

The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. A search made without a warrant is considered unreasonable unless that search can be justified by one of the narrowly drawn exceptions to the warrant requirement. *State v. Cavalier,* 14-579 (La.App. 4 Cir. 6/19/15), 171 So.3d 1117, *writ denied,* 15-1374 (La. 9/6/16), 205 So.3d 914. One of the specifically established exceptions to the warrant requirement is a search conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 204 (1973); *State v. Wilson*, 467 So.2d 503 (La.1985), *cert. denied,* 474 U.S. 911, 106 S.Ct. 281 (1985). Oral consent is valid. *State v. Hudnall*, 39,723 (La.App. 2 Cir. 5/11/05), 903 So.2d 605. On a motion to suppress, a defendant has the burden of proving the grounds for his motion, "except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant." La.Code Crim.P. art. 703(D).

Louisiana Revised Statutes 32:661 provides in pertinent part:

> A. (1) Any person, regardless of age, who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of R.S. 32:662, to a chemical test or tests of his blood, breath, urine, or other bodily substance for the purpose of determining the alcoholic content of his blood, and the presence of any abused substance or controlled dangerous substance as set forth in R.S. 40:964 in his blood if arrested for any offense

6

arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while believed to be under the influence of alcoholic beverages or any abused substance of controlled dangerous substance as set forth in R.S. 40:964.

. . . .

C. (1) When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:

(a) His constitutional rights under Miranda v. Arizona.

(b) That his driving privileges can be suspended for refusing to submit to the chemical test.

(c) That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of 0.08 percent or above or, if he is under the age of twenty-one years, a blood alcohol level of 0.02 percent or above.

(d) That his driving privileges can be suspended if he submits to the chemical test and the test results show a positive reading indicating the presence of any controlled dangerous substance listed in R.S. 40:964.

(e) The name and employing agency of all law enforcement officers involved in the stop, detention, investigation, or arrest of the person.

(f) That refusal to submit to a chemical test after an arrest for an offense of driving while intoxicated if he has refused to submit to such test on two previous and separate occasion of any previous such violation is a crime under the provision of R.S. 14:98.2 and the penalties for such crime are the same as the penalties for first conviction of driving while intoxicated.

(2) In addition, the arresting officer shall, after reading said form, request the arrested person to sign the form. If the person is unable or unwilling to sign, the officer shall certify that the arrestee was advised of the information contained in the form and that the person was unable to sign or refused to sign.

7

***Blood/alcohol test***

Defendant argued that the Louisiana implied consent laws, "as it relates specifically to blood draws, has been ruled unconstitutional by the United States Supreme Court," by *Missouri v. McNeely*, 569 U.S. 141, 133 S.Ct. 1552 (2013) and *Birchfield v. North Dakota*, ___ U.S. ___, 136 S.Ct. 2160 (2016). The State asserts in brief that the trial court erroneously based its decision on the above two cited United States Supreme Court cases.

In *McNeely*, the Supreme Court held that the natural metabolization of alcohol in the bloodstream did not present a per se exigency that justified an exception to the Fourth Amendment requirement for a warrantless blood testing. The State is not arguing a "per se exigency" was involved in this case, but rather that the consent defendant gave for the blood drawn was voluntary. The State further argues that *Birchfield* is inapposite to the current case because in *Birchfield* the defendant refused to give consent. There were three defendants in *Birchfield*. One of the defendants, Mr. Beylund, consented to the blood/alcohol test because he was told he did not have the right to refuse and if he did, his license would be suspended and he would be fined in an administrative proceeding. In *Birchfield,* 136 S.Ct. at 2186, the Supreme Court, while addressing how the "search-incident-to-arrest" doctrine applied to blood tests, stated:

> Unlike the other petitioners, Beylund was not prosecuted for refusing a test. He submitted to a blood test after police told him that the law required his submission, and his license was then suspended and he was fined in an administrative proceeding. The North Dakota Supreme Court held that Beylund's consent was voluntary on the erroneous assumption that the State could permissibly compel both blood and breath tests. Because voluntariness of consent to a search must be "determined by the totality of all the circumstances," *Schneckloth, supra*, at 227, 93 S.Ct. 2041 we leave it to the state court on remand to reevalutate Beylund's consent given the partial inaccuracy of the officer's advisory.

The Supreme Court noted specifically that "[o]ur prior opinions have referred approvingly to the general concept of implied consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." *Id* at 2185. The Supreme Court, however, further stated that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186.

The form Trooper Sims read to Defendant indicated that he had the right to refuse the test but if he did, he would be fined and his license would be revoked for a year. The form also indicated that a refusal **could** constitute a crime. If *Birchfield* is retroactively applicable to Defendant's case, the State suggests that the good faith exception to the exclusionary rule applies, as discussed in depth below. However, while the trial court acknowledged the holding in *Birchfield*, the trial court did not indicate that it relied on *Birchfield* and *McNeely* to support its ruling to exclude the evidence.

In the current case, Defendant's primary argument was that because his injuries resulted in diminished mental capacity, he was not capable of giving consent; thus, the State should have obtained a warrant. The trial court's May 11, 2017, ruling was based on Defendant's alleged inability to consent due to the extent of the injuries as described during the suppression hearing and the fact that the troopers both testified that they did not know what medications, if any, were administered to Defendant at the hospital. The trial court further noted that while Defendant was deemed incapable of signing any of the forms giving consent for the blood/alcohol test or indicating his understanding and acknowledgement of the wavier of his *Miranda* rights with his signature, there was no explanation of why he was unable to sign the forms. The only explanation pointed out by Defendant

9

was the notation in the EMT's records that Defendant suffered an altered level of consciousness three hours earlier at the scene of the accident and that a neurological condition limited his ability to sign.

While the State had the burden of proving the admissibility of the evidence, Defendant had the burden of proving the grounds for his motion to suppress. We find that Defendant failed to present any evidence that because of his injuries, his consent was not valid or that he suffered any sort of diminished capacity or inability to understand and acknowledge the rights that he was giving up. While Defendant presented the EMT's records, which were observations made at the accident site three hours earlier, there were no medical records presented from the hospital which would have established his mental state upon arrival, the extent of his injuries, or the medications he may have been administered prior to the two troopers interviewing him at the hospital. Defendant even had the opportunity at the hearing to examine the nurse who drew his blood. Instead, Defendant agreed with the trial court that the nurse's testimony would have been irrelevant to the suppression question, even though the nurse's observations about Defendant's mental status and his medications could have been very relevant.

As pointed out by the State, the trial court relied on observations noted in the EMT's report that Defendant was suffering from altered levels of consciousness and was unable to sign a consent form for treatment three hours before the trooper spoke with Defendant at the hospital. In its ruling, the trial court stated that Trooper Sims noted on the optional test form that Defendant was incoherent. Trooper Sims explained what he meant was that it was difficult to understand Defendant. Defendant's "incoherency," his trouble speaking, may have been due

to the fact he had suffered fractures of his jaw during the accident, not because he did not understand what was being told to him or asked of him by the troopers.

Defendant's actual answers, as noted by Trooper Sims, were specific. He told Trooper Sims that he had been drinking crown and coke. There was testimony that an opened crown royal bottle was found in the Defendant's truck. He told the trooper that he was at Burton Coliseum and was driving a friend home when the accident occurred. He also told Trooper Sims that he had seen a doctor for a health checkup on the Wednesday before. He even told the trooper the doctor's name. When asked if he had taken any medication in the last twenty-four hours, he answered yes, but there was no indication of what type, how much, or what time the medication was taken.

Trooper O'Connell visited Defendant at the hospital an hour later. He testified Defendant was conscious, and although he was slurring his words, Defendant gave the trooper the same information he gave to Trooper Sims. The trial court discussed the troopers' credibility, calling their testimony "honest," yet the trial court seemed to rely almost entirely on the EMT's observations at the time of the accident and, erroneously, in our view, completely disregarded the testimony of the troopers that defendant gave free and voluntary statements and freely and intelligently consented to the blood draw.

The State points out in brief that the trial court stated the troopers' testimonies were credible and reliable and argues, "A trial court's determination and its conclusions on credibility and weight of testimony relating to voluntariness of the confession are entitled to great weight and will not be overturned unless unsupported by the evidence." *State v. Batiste*, 06-824, p. 10 (La.App. 5 Cir.

11

3/13/07), 959 So.2d 626, 634; *see also State v. Massey*, 02-872 (La.App. 5 Cir. 2/11/03), 841 So.2d 862, *writ denied*, 03-805 (La. 10/17/03), 855 So.2d 758."

Moreover, even were we to find, which we do not, that Defendant's consent was not valid and the trooper should have obtained a warrant prior to the blood draw, the State argues that Trooper Sims acted in good faith and the evidence should not be excluded from trial. In *State v. Brock*, 47,005, pp. 5-7 (La.App. 2 Cir. 3/7/12), 91 So.3d 1003, 1006-07, *writ denied*, 12-784 (La. 9/28/12), 98 So.3d 826, the second circuit noted in a similar case:

> If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. *State v. Benjamin,* 97-3065 (La.12/1/98), 722 So.2d 988, citing *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). This exclusionary rule is designed to safeguard Fourth Amendment rights generally through its deterrent effect. *Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). However, the fact that a search or arrest was unreasonable does not necessarily mean that the exclusionary rule applies. The exclusionary rule is not an individual right and applies only where it results in appreciable deterrence. In addition, the benefits of deterrence must outweigh the substantial social cost of letting guilty and possibly dangerous defendants go free. *Herring, supra*.
>
> The United States Supreme Court has created a good faith exception to the exclusionary rule. In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the court held that evidence seized in a search pursuant to a warrant, which was invalid for lack of probable cause, need not be excluded at trial if the officers who conducted the search reasonably believed that the warrant was valid. *United States v. Leon, supra; State v. Long,* 2003-2592 (La.9/9/04), 884 So.2d 1176. The court explained that the exclusionary rule "is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon,* 468 U.S. at 916, 104 S.Ct. at 3417.
>
> In 2009, the United States Supreme Court applied *Leon's* good faith exception to allow admission of evidence obtained after an arrest made pursuant to a previously recalled warrant. In the *Herring* case, officers in Coffee County arrested Herring based on an outstanding warrant listed in a neighboring county's database. A search incident to that arrest yielded methamphetamine and a pistol. It was then determined that the arrest warrant had been recalled five months earlier, but that information had not been entered into the database.

Herring sought exclusion of the evidence. The court stated that the exclusionary rule serves to deter deliberate, reckless or grossly negligent conduct and found that the conduct of the officers was not so objectively culpable as to require exclusion. The court found that any marginal benefit resulting from the suppression of evidence obtained by officers acting in objectively reasonable reliance on a subsequently recalled warrant did not justify the substantial cost of exclusion. *Herring, supra*.

The State further argues, in the alternative, that the inevitable discovery doctrine should allow the blood/alcohol test results to be admitted at trial since Trooper Sims testified that if he had not gotten consent, he would have applied for a warrant. A statement by police officers that they will apply for a warrant if refused consent for a search does not necessarily vitiate the voluntariness of the consent. *State v. Franklin*, 95-1876 (La. 1/14/97), 686 So.2d 38; *State v. MacDonald*, 390 So.2d 1276 (La.1980). The inevitable discovery doctrine is a well-settled judicial doctrine that supplies an exception to the exclusionary rule. *State v. Hill*, 97-2551 (La. 11/16/98), 725 So.2d 1282. In fact, in this case the trial judge noted in his reasons for ruling: ". . . the judge would have signed a warrant and got the permission to draw the blood, okay, under this type of injury, all right."

In response to the State's inevitable discovery and good faith alternatives, Defendant incongruously argues that "the State should be prevented from raising new arguments for the first time on appeal." Defendant cites several cases which are not applicable to the instant case. In those cases, motions to suppress were never filed prior to trial, or the alleged inadmissible evidence was given at trial and defendant did not object, thereby waiving the issue on appeal. Defendant is attempting to imply that since the State did not specifically discuss the inevitable discovery doctrine or the good faith exceptions to the exclusionary rule at the suppression hearing, the State should not be allowed to raise those arguments now.

13

In *State v. Guidry*, 03-625 (La.App. 5 Cir. 1/27/04), 866 So.2d 944, the trial court granted the defendant's motion to suppress based on a defective warrant. The state filed for supervisory review, and the fifth circuit agreed with the trial court. The state then filed a writ with the supreme court seeking review of the fifth circuit's ruling. The supreme court remanded to the fifth circuit "for written treatment and reconsideration in light of *United State v. Leon*, [468 U.S. 897, 104 S.Ct. 3405 (1984)] which generally recognized a 'good faith' exception to precluding suppression." *Id.* at 945; *see also State v. Guidry*, 03-1944 (La. 11/21/03), 862 So.2d 965.

In this case, considering the testimony of the two troopers and the circumstances as presented at the hearing, this court finds that the State met its burden of proving that the statements to the troopers were freely and voluntarily made and that Defendant's consent to allow the blood/alcohol test was knowingly and voluntarily given. Any marginal benefit resulting from the suppression of evidence obtained by the troopers acting in objectively reasonable reliance on Defendant's verbal consent did not justify the substantial cost of exclusion. The trial court erred when it granted Defendant's motion to suppress the results of the blood/alcohol test.

We further find that Defendant's verbal acknowledgement of his *Miranda* rights was voluntarily and knowingly given and that his lack of signature due to his injuries did not indicate lack of consent to answer questions. In *State v. Johnson*, 07-1040 (La.App. 4 Cir. 9/10/08), 993 So.2d 326, *writ denied,* 08-2649 (La. 6/5/09), 9 So.3d 868, the defendant, who was severely burned when he set his girlfriend on fire, sought to suppress statements because he was so incapacitated by his injuries that he was unable to knowingly and intelligently waive his *Miranda*

14

rights. While Johnson was on medication for his burns and did sign the waiver of rights form, the fourth circuit noted that "[i]n cases involving allegations of diminished mental capacity, a defendant has the burden of proving the existence of any mental abnormality that might render his confession per se involuntary." *Id*. at 333.

Finally, we also note that the Trooper Sims was found credible by the trial judge and acted in good faith when he accepted Defendant's verbal consent to the blood/alcohol test and the verbal waiver of his *Miranda* rights.

## CONCLUSION

**WRIT GRANTED AND MADE PEREMPTORY**: The trial court erred when it granted Defendant's October 17, 2016, motions to suppress the blood/alcohol test results and the statements made by Defendant. The State met its burden of establishing that Defendant freely and voluntarily gave verbal consent to the test and that he knowingly and intelligently waived his *Miranda* rights. Accordingly, the trial court's ruling is reversed, and the matter is remanded for further proceedings.

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

17-580

STATE OF LOUISIANA

VERSUS

DAVID RAY NEWSOM

**GREMILLION, J.,** dissents for the following reasons:

I respectfully disagree with the majority. I find this court's review of the trial court's determinations hinges on the standard of review. As the majority points out, we should not disturb the lower court's findings unless there is a "clear abuse of discretion" because they are entitled to "great weight." *State v Thomas*, 02-471, p.3 (La.App. 3 Cir. 10/30/02), 829 So.2d 1137, 1139-40, *writ denied*, 02-2920 (La. 4/21/03), 841 So.2d 789. Here, the trial court relied on evidence that the defendant was injured, medicated, and was suffering from an "altered level of consciousness" at the time he offered consent and was *Mirandized*. Were I sitting on the trial bench, I may have ruled differently. But, from the appellate bench, I cannot see any clear abuse of discretion. Therefore, I would deny the state's writ.