UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4049**
(1:12-cr-00093-CCE-1)

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

        v.

DAWUD ALI SAAFIR,

             Defendant – Appellant.

O R D E R

The Court amends its opinion filed June 11, 2014, as follows:

On page 4, third paragraph, line 3 –– the word "opened" is corrected to read "unopened."

For the Court – By Direction

/s/ Patricia S. Connor
                      Clerk

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4049**

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

     v.

DAWUD ALI SAAFIR,

               Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Catherine C. Eagles, District Judge. (1:12-cr-00093-CCE-1)

Argued: January 30, 2014          Decided: June 11, 2014

Before MOTZ and THACKER, Circuit Judges, and DAVIS, Senior Circuit Judge.

Reversed, vacated, and remanded by published per curiam opinion.

**ARGUED:** John Archibald Dusenbury, Jr., OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant. Michael A. DeFranco, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Louis C. Allen, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant. Ripley Rand, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

PER CURIAM:

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures: "The right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. A search can be "unreasonable" in a variety of ways, but, quintessentially, a search is "unreasonable" if it is unsupported by probable cause, that is, where the known facts and circumstances are insufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found. Ornelas v. United States, 517 U.S. 690, 696 (1996).

Appellant Dawud Ali Saafir entered a conditional guilty plea to one count of being a felon in possession of a firearm. 18 U.S.C. §§ 922(g)(1), 924(a)(2). A law enforcement officer located the firearm after conducting a search of Saafir's vehicle during a traffic stop. Saafir challenged the legality of the search, but the district court denied his motion to suppress.

We hold that the law enforcement officer's search of Saafir's car was unreasonable within the meaning of the Fourth Amendment because the probable cause on which the search was based was tainted: Saafir's incriminatory statements that gave rise to probable cause to search the car were elicited in

2

response to the officer's manifestly false assertion that he had probable cause to search the car and his suggestion that, with or without Saafir's consent, he would proceed with the search.

The facts are undisputed. A Durham, North Carolina law enforcement officer pulled over Saafir in a residential area for speeding and driving a vehicle with excessively tinted windows. The officer requested Saafir's license and registration; Saafir produced a valid state identification card, but told the officer that his license had been revoked. The officer ran Saafir's name through the Durham Police Department's databases, which confirmed that Saafir's license had been revoked. Based on the information retrieved in the check, the officer, in his words, "determined that Mr. Saafir was considered an armed and dangerous person, a validated gang member, a S.T.A.R.S. offender, that he flees," and had an order to stay away from any property of the Durham Public Housing Authority. J.A. 45, 63. The officer described S.T.A.R.S. offenders as ex-offenders who are on their "last chance": "if they are caught selling drugs, caught with guns, caught committing any more crimes, . . . the state is not going to tolerate it any longer, and . . . they will be prosecuted to the maximum [extent of the law], whether . . . at the state . . . or federal level." J.A. 46. After running the check, the officer radioed for back-up.

3

Although he did not write a ticket for speeding, the officer wrote warning tickets for driving with a revoked license and tinted windows. After instructing Saafir to exit the car so that he could explain the tickets, the officer noticed a hip flask commonly used to carry alcohol in the pocket of the driver-side door. (The officer never confirmed that there was alcohol or anything else in the flask.) Once Saafir exited the car, the officer explained the warning tickets to Saafir and returned his identification documents.

The officer then told Saafir that there had been shootings and violence in the area, and he asked if he could frisk Saafir. Saafir consented. The frisk revealed nothing. By this point, a second uniformed officer in a marked police vehicle had arrived. The first officer continued his investigation by asking if he could search Saafir's car. Saafir refused to consent, explaining that it was not his car. The officer persisted, stating that a temporary user of the car could consent to a search, but Saafir demurred. As the district court found, the officer "basically tried to talk him into letting him search the car." J.A. 155.

A North Carolina statute makes it an infraction for any person to "possess an alcoholic beverage other than in the unopened manufacturer's original container." N.C. Gen. Stat. § 20-138.7(a1). Apparently relying on this statute, and faced with Saafir's refusal to consent to a search of the vehicle, the

4

officer instructed Saafir that he had probable cause to search the car based on the presence of the hip flask. Upon hearing this, Saafir "bowed his head and gave out a sigh," J.A. 63, but did not express consent.

Having declared his authority and his intent to search the car, the officers asked Saafir if there was anything they should know about inside; Saafir responded that there "might" be something. When pressed for clarification, Saafir responded that there "might" be a gun in the vehicle, and that it "might" be under the seat. J.A. 156. The officers searched the car, but did not find a weapon; they located, however, a small amount of "aged, dried-up marijuana" in the pocket of the driver-side door. J.A. 54. Neither officer touched the flask. There was no evidence that Saafir had been drinking - there was no odor of alcohol on Saafir or in the car. Upon request, Saafir provided the key to the locked glove compartment, where the pistol was found.

A grand jury indicted Saafir on one count of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2), for being a felon in possession of a firearm. Saafir moved to suppress the gun and his statements relating to the gun. The district court denied the motion, finding, among other things, that Saafir's admission that there "might" be a gun in the car gave the officers probable cause to search the vehicle. Saafir entered a

5

conditional guilty plea and the district court sentenced him to 23 months in custody and a three-year term of supervised release. Saafir timely appealed the denial of the motion.

Saafir raises several arguments on appeal, but the contention on which we focus is that the district court erred when it failed to suppress the evidence obtained through the search of the car because the officer was only able to obtain probable cause to conduct the search – Saafir's admission that there "might" be something in the vehicle – after falsely asserting that he had probable cause to search Saafir's car. We agree. We hold that the officer's assertion that the existence of the hip flask provided him with probable cause to search the car was an independent, antecedent threat to violate the Fourth Amendment that ultimately fatally taints the search of the car and the seizure of the gun. We note that because this contention was not precisely raised below, we ordered supplemental briefing and we thank counsel for their submissions. We exercise our discretion to consider the contention because a litigant may make any argument on appeal in support of a federal claim properly made below. Citizens United v. Federal Election Commission, 558 U.S. 310, 330-31 (2010). While we review the district court's factual findings for clear error, we review its legal conclusions de novo. United States v. Digiovanni, 650 F.3d 498, 506 (4th Cir. 2011).

6

Importantly, the Government concedes that the officer's assertion that the hip flask gave him probable cause to search the car was a misstatement of the law. We agree. Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas, 517 U.S. at 696. The officer admitted that he never checked that the flask had alcohol (or anything else) in it. And he admitted that there was no other evidence suggesting that Saafir was under the influence of alcohol or intoxicated. Accordingly, there was no probable cause to search the car for any crime related to alcohol in a flask, and certainly not for any other crime.

Accordingly, we conclude that the officer's false assertion of his authority to search the car irreparably tainted Saafir's incriminatory statements and the ensuing search of the car. A search or seizure is unreasonable and therefore unconstitutional if it is premised on a law enforcement officer's misstatement of his or her authority; this principle stretches at least as far back as Bumper v. North Carolina, 391 U.S. 543, 547-50 (1968), in which the Supreme Court invalidated a defendant's consent to the search of her home after the officer stated falsely that he possessed a warrant. Here, we have Saafir's incriminatory statements giving rise to probable cause to search the car, not

7

his express consent to a search of the vehicle. The distinction matters not. The principle that animates these cases is simple: a search is unreasonable -- and so violates the Fourth Amendment -- if its justification is grounded in officers "engaging or threatening to engage in conduct that violates the Fourth Amendment." Kentucky v. King, 131 S. Ct. 1849, 1858 (2011). Thus, just as an officer may not manufacture exigent circumstances to justify a warrantless search by means that run afoul of the Fourth Amendment, id., an officer may not manufacture probable cause by unlawful means, including by way of a false claim of legal authority that constitutes a threat to violate the Fourth Amendment. See United States v. Guzman, 739 F.3d 241, 247 (5th Cir. 2014). "An inadmissible statement cannot constitute probable cause to support an otherwise illegal search. [The officer's] statement, that he was 'going to search the car,' could constitute a false claim of lawful authority affecting the validity of" the defendant's subsequent statement that he had a gun in the car. Id. (remanding the case for further fact-finding).

The Government concedes that a law enforcement officer may not misstate his lawful authority, and it concedes that the officer misstated his authority in this case, but it maintains that the misstatement was irrelevant because Saafir's admissions

giving rise to probable cause were not a direct product of the officer's flexing of his authority.

The record overwhelmingly demonstrates otherwise. Saafir refused to consent to a search of the car multiple times. Instead of consenting (as he had to the pat-down), he stoutly resisted the officer's efforts to, as the district court found, "talk him into letting him search the car." J.A. 155. It was only after the officer asserted that a search of the car was inevitable (by declaring that he had probable cause to do so) and continued to press him with questions about the contents of the car that Saafir admitted the presence of the gun in the car. The causal connection is clear: Saafir made incriminating statements shortly after the officer's false assertion of the existence of probable cause to search the car. Here, as a matter of law, probable cause for a warrantless search of the car was rooted directly in the elicitation of incriminating statements made in response to the officer's dishonest, reckless, or objectively unreasonable asserted belief in the existence of probable cause. Cf. United States v. Leon, 468 U.S. 897, 925 (1984).

Saafir's incriminatory statements could not, therefore, serve as a proper basis for probable cause for a search of the car. Consequently, both the statements and the tangible fruits of the ensuing search of the vehicle should have been

suppressed. Wong Sun v. United States, 371 U.S. 471, 487–88 (1963). We therefore reverse the district court's order denying the suppression motion, vacate Saafir's conviction, and remand this case for further proceedings consistent with this opinion.

REVERSED, VACATED, AND REMANDED;
MANDATE SHALL ISSUE FORTHWITH