NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0341n.06

Case No. 21-5859

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | ) | **FILED** |
| | ) | Aug 18, 2022 |
| | ) | DEBORAH S. HUNT, Clerk |
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| SIRRON MORALEZ, | ) | |
| *Defendant-Appellant*. | ) | OPINION |
| | ) | |

Before: DONALD, BUSH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, J., delivered the opinion of the court in which BUSH, J., joined. DONALD, J. (pp. 8–12), delivered a separate dissenting opinion.

NALBANDIAN, Circuit Judge. Sirron Moralez took a cross-country trip from Wyoming to Tennessee with a backpack full of methamphetamine as his traveling companion. But before he could cross the Tennessee border, a Kentucky trooper pulled him over for speeding. During the stop, the trooper observed a box with "THC" written on it and a glass vial of white powder in Moralez's car. A subsequent search of the car uncovered almost a kilo of meth. After his indictment, Moralez moved to suppress this evidence, citing a lack of probable cause. But the district court, relying on the automobile exception, denied his motion. For the following reasons, we affirm.

**I.**

To work off a $2,000 debt owed to his cocaine dealer, Moralez agreed to deliver a package of methamphetamine from Wyoming to Tennessee. But before he got to Tennessee, Kentucky State Police Trooper T.J. Williams clocked Moralez going more than ten miles over the speed limit and pulled him over.

After Williams approached the car, Moralez turned over his driver's license and explained that he drove a rental car. Williams followed up by asking for the rental paperwork. As Moralez rifled through the center console to find it, Williams glimpsed a brown box with the label "THC." Williams knew this kind of box typically contained marijuana vape oil, which is illegal in Kentucky. His suspicions raised, Williams asked Moralez to sit in the front of the squad car while Williams ran his license. Moralez agreed. As Moralez exited his car, Williams caught another glimpse of potential contraband. This time, it came in the form of a small glass vial filled with white powder that looked like cocaine or methamphetamine.

To keep Moralez from running off, Williams stayed mum about the vial and marijuana paraphernalia. As he ran the driver's license, Williams chatted with Moralez about the purpose of his trip. Moralez spun a yarn that Williams had heard before, explaining that he made the long drive alone just to spend a few days in Nashville. When pressed, Moralez admitted that he didn't know where he was staying, only that he would have to call someone when he got there. Based on his 30-plus years of experience, Williams thought Moralez's tale sounded like that of a drug courier. What's more, as Moralez told his story, he started to sweat profusely despite the air conditioning in Williams's cruiser. And as Moralez spoke, he couldn't stop picking at his fingers or laughing nervously.

At this point, Williams knew that he had enough evidence to search the car. With the help of another trooper, he did just that. The troopers found close to a kilo of methamphetamine. And as it turns out, the vial was filled with cocaine and the THC box contained a marijuana vape pen Moralez bought in Colorado.

Soon after the search and subsequent arrest, a federal grand jury charged Moralez and two others with conspiracy to possess methamphetamine with intent to distribute under 21 U.S.C. § 846 and then Moralez alone with possession with intent to distribute under 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). Moralez then moved to suppress the evidence from his car. His theory? Williams didn't have probable cause for the search because the THC couldn't qualify as contraband at first glance. After a suppression hearing, the district court denied Moralez's motion. Weighing the totality of the circumstances, the court concluded that "the glass vial alone gave Williams probable cause," and when considered with "all [the] other circumstances . . . probable cause is clear." *United States v. Moralez*, No. 5:19-cr-00068, 2020 WL 6492918, at *2 (W.D. Ky. Nov. 4, 2020).

Once the district court denied his motion, Moralez pleaded guilty. But as part of his plea deal, he preserved the right to appeal the denial of his suppression motion. *See* Fed. R. Crim. P. 11(a)(2).

Exercising that right, Williams now asks us to reconsider the district court's decision. But that's not all. For the first time on appeal, Moralez objects to the length of the stop, the validity of his arrest, a late *Miranda* warning, and more. We consider the argument he preserved first and then turn to his new claims.

**II.**

**A.**

When a district court's ruling on a motion to suppress comes to us, we review the district court's findings of fact for clear error and questions of law de novo. *United States v. Gardner*, 32 F.4th 504, 514 (6th Cir. 2022). In doing so, we view the evidence "in the light most likely to support the district court's decision." *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000) (quotation omitted). Here, Moralez's sole challenge is whether Williams have probable cause to search Moralez's vehicle. We review the ultimate determination of probable cause de novo. *Gerics v. Trevino*, 974 F.3d 798, 805 (6th Cir. 2020); *Ornelas v. United States*, 517 U.S. 690, 697 (1996).

We begin with the basics. The Fourth Amendment, as a general matter, requires probable cause and a search warrant before an official may conduct a search. *See Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). There are, of course, exceptions to the warrant requirement. Relevant here, the automobile exception allows law enforcement to search a vehicle "without a warrant if they have probable cause . . . that the vehicle contains evidence of a crime." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998). Probable cause exists when the totality of the circumstances shows a "fair probability that contraband or evidence of a crime will be found in a particular place." *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998) (quoting *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994)). To conduct this analysis, we don't look at events after the search or the subjective intent of the officers. Instead, we look at "the objective facts known to the officers at the time of the search." *Id.* at 1075.

The district court did just this, asking what objective facts Williams knew when he searched Moralez's car. Fact one: Williams saw a box—the kind that normally holds marijuana paraphernalia—in Moralez's car. Marijuana is illegal in Kentucky. *See* Ky. Rev. Stat. Ann.

§ 218A.1422. Fact two: When Moralez exited the car, Williams got a glimpse of a glass vial filled with white powder.[1] Fact three: During his chat with Williams, Moralez acted nervous and told a story consistent with those of other drug couriers that Williams had encountered in his decades of law enforcement. Taken together, the THC box and the glass vial gave Williams at least a fair probability that a search of the car would come up with contraband. And then Moralez's nervous behavior and dodgy cover story bolstered that belief. So we agree with the district court that these facts show that "Williams had probable cause to believe the vehicle contained evidence of a crime." *Moralez*, 2020 WL 6492918, at *2.

Moralez's argument that neither the THC box nor the vial alone provided probable cause fails to convince us otherwise. For one thing, that argument misunderstands what the totality-of-the-circumstances analysis does. To start, we look at the entire picture rather than engaging in a "hypertechnical line-by-line scrutiny." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (en banc) (alterations and quotation omitted); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) (explaining that the "totality-of-the-circumstances test 'precludes [a] divide-and-conquer analysis'" (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002))). So instead of asking whether the THC box or the vial alone provided probable cause, we ask whether all of the evidence, taken together, gave Williams probable cause to search the vehicle.

---

[1] The dissent disagrees with the district court's version of the facts on this point. As the dissent sees it, the dashcam video and Williams's post-arrest report contradict his testimony that Williams saw the glass vial before the search. We disagree: (1) Williams had a clear view of the front seat when Moralez got out of the car (D.E. 34, 02:17), (2) Williams told the other officer that Moralez "dropped that when he got out," (*Id.*, 17:07) and (3) Williams asked Moralez about the vial that he dropped when he got out of the car. (*Id.*, 20:23.) True, the post-arrest report mentions the vial after the search. But given the video evidence and Williams's testimony (that the district court found credible), we cannot say that the district court erred, much less clearly.

Contrary to Moralez's assertions, the district court gave proper consideration to both the THC box and the vial. True, the court said that with only the THC box "probable cause may be debatable." *Moralez*, 2020 WL 6492918, at *2. But that was just the first domino to fall. After seeing the box, Williams then saw the glass vial. And the district court said that the "vial alone gave Williams probable cause." *Id.* We agree. A vial of white powder gave Williams more than a fair probability that he would uncover illegal contraband. *See Texas v. Brown*, 460 U.S. 730, 742–43 (1983) (finding that a balloon tied up in a way often used to carry narcotics gave probable cause); *United States v. Baxter*, 69 F.3d 538 (6th Cir. 1995) (unpublished table decision) (per curiam) (holding that an officer had probable cause to arrest after observing a vial with a white powder).

All told, the THC box, the vial, Moralez's nervous behavior, and his suspicious story, gave Williams probable cause to search his car. The dissent's conclusion otherwise is an exercise in the "divide-and-conquer analysis" that the Supreme Court prohibits. *Wesby*, 138 S. Ct. at 588.

**B.**

Now we turn to the arguments that Moralez makes for the first time on appeal. Moralez argues that there was no probable cause for his arrest (as opposed to the search); the stop went on too long; Williams was not allowed to ask for rental paperwork; Williams was not allowed to ask Moralez to sit in the squad car; Williams issued the *Miranda* warning too late; and the inevitable discovery exception to the warrant requirement doesn't apply. But Moralez didn't make any of those arguments to the district court. And when Moralez pleaded guilty, his Rule 11(a)(2) plea agreement preserved only the right to "appeal the District Court's Memorandum Opinion and Order denying his Motion to Suppress." (R. 69, Plea Agreement, PageID 199 (emphasis and

brackets omitted).) That order—and Moralez's motion to suppress—didn't cover any of the new issues that Moralez raises.

Under our caselaw, Moralez's failure to preserve these specific issues is a fatal problem. "A voluntary and unconditional guilty plea waives all non-jurisdictional defects in the proceedings." *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001). But under Rule 11(a)(2), a defendant may enter a conditional guilty plea preserving the right to appeal specific pre-trial motions and specific issues on appeal. *See United States v. Alexander*, 540 F.3d 494, 504–05 (6th Cir. 2008). When a defendant, as here, fails to preserve a specific issue for appeal in his plea agreement, that issue is not properly before us. *See id.* at 505; *see also United States v. Napier*, 233 F.3d 394, 399 (6th Cir. 2000) (finding that the defendant didn't preserve an issue not written in his plea agreement); *United States v. Goyer*, 567 F. App'x 414, 420 (6th Cir. 2014) (declining to rule on a jury-instruction issue because it wasn't preserved on appeal); *United States v. Dossie*, 188 F. App'x 339, 345 (6th Cir. 2006) (same for other issues when the defendant only preserved appeal on double jeopardy and collateral estoppel grounds); *see also United States v. Anderson*, 374 F.3d 955, 957–58 (10th Cir. 2004) (refusing to consider defendant's new appellate suppression theory because it was "outside the scope of his reserved appellate rights"). Because Moralez didn't preserve his new arguments in his plea agreement, we can't hear them now.

And even if we construed some of his arguments as going to "suppression" broadly and thus not precluded by his plea agreement, they would still fail. Because he didn't raise those arguments in the district court, we would apply plain error and that standard is not met here.

**III.**

The arguments Moralez properly preserved for appeal lack merit. We affirm.

BERNICE BOUIE DONALD, Circuit Judge, dissenting.   This is a case where a police officer's zealous pursuit for an arrest blurred his constitutional obligation to find legitimate probable cause before searching a vehicle.  In a series of arguably intentional missteps, the officer exploited legal loopholes to arrive at this place–a violation of Moralez's Fourth Amendment right against unreasonable searches and seizures.  Because I believe that the officer lacked probable cause to search the vehicle, I dissent.

The majority suggests there are three "objective facts" that Williams knew at the time of the search that support a finding in favor of probable cause: (1) the glass vial of white powder found on the driver's seat, (2) the small THC-labeled box in the center console, and (3) Moralez's nervous demeanor and evasive responses.  *See ante,* at 4-5.  The majority's interpretation of these material facts is a clear departure from the record and leaves out critical moments leading up to the search.  *Id.* at 1-3.  Williams's testimony of the facts leading up to the search are at odds with the dashcam footage of the arrest and his own post-arrest complaint.  Upon thorough review of the record and applicable law, the officers lacked probable cause to search Moralez's vehicle at the time of the search.

First, the glass vial was not known to Williams at the time that he initiated the search.  In the post-arrest report written by Williams immediately after the search, he stated that probable cause was established "[d]ue to the fact I observed the THC container" only.  Williams further admitted that he did not see the vial initially, but that the vial was located *after* the search was initiated.

The alarming discrepancies surrounding the vial of powder create further cause for concern upon review of the dashcam footage of Williams's interaction with Moralez. When video footage of an incident is available to the court, the facts should be viewed in "the light depicted by the

videotape." *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Throughout the video footage, several interactions illustrate discrepancies in Williams's testimony regarding the vial of white powder. For example, in the Kentucky Incident-Based Reporting System ("KYIBRS"), Williams stated that he "observed a small glass vial on the driver's seat" prior to initiating the search which would have given him probable cause to search Moralez's vehicle. However, the video footage does not show that Williams saw or could have seen the vial of white powder fall out of Moralez's pockets. Even when viewing the footage in a light most favorable to the state, it is clear that Williams had an obstructed view of the driver's seat from his position at the rear passenger window. In addition, Williams initially stated that the THC box gave him probable cause to search the vehicle; he did not, however, mention any glass vial or independent basis to establish probable cause until months after the arrest. The live video footage is telling of this reality. During the video, there is absolutely no mention of the vial of white powder by Williams until approximately seventeen minutes after the stop was initiated. And it was the second officer, not Williams, that located the vial in the driver's seat of the car.

Second, I agree with the district court's assessment that "if Williams had only observed the brown box, probable cause may [be] debatable." *United States v. Moralez*, No. 5:19-cr-00068, 2020 WL 6492918, at *3 (W.D. Ky. Nov. 4, 2020). A container located in a vehicle may amount to probable cause when the container provides "more than a mere suspicion" or when the search qualifies as protective in nature. *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)); *see United States v. Goodwin*, 202 F.3d 270, at *4 (6th Cir. 2000) (Table). Here, the THC box, which was ultimately empty, only provided a mere suspicion that Kentucky's marijuana statute, Ky. Rev. Stat. Ann. § 218A.1422, was being violated.

Our sister circuit has settled this exact issue of containers that provide a mere suspicion of a violated statute in *United States v. Saafir*, 754 F.3d 262 (4th Cir. 2014). In *Saafir*, an officer observed a "hip flask commonly used to carry alcohol" in a stopped vehicle. *Id.* at 265. If the flask contained alcohol, the defendant would have been in violation of a North Carolina statute regarding the transportation of alcohol in a container other than the manufacturer's original container. *Id.*; s*ee* N.C. Gen. Stat. § 2-138.7(a1). The officer used the presence of the flask as foundation for probable cause to search the entire vehicle. *Saafir*, 757 F.3d at 265. The court properly held that the hip flask did not provide the officer probable cause; furthermore, "a search and seizure is unreasonable and therefore unconstitutional if it is premised on a law enforcement officer's misstatement of his or her authority." *Id.* at 266 (citing *Bumper v. North Carolina*, 391 U.S. 543, 547-50 (1968)).

Here, Moralez was in possession of a merely suspicious container which ultimately contained no evidence of a crime. Williams plainly stated to Moralez that the box warranted a search of the entire vehicle, and this statement is a plain misstatement of the law. It therefore follows that we should adopt the same rule put forth in *Saafir*: an officer may not initiate a search solely based upon the presence of a merely suspicious container, and the officer may not misstate their authority when initiating a search.

This circuit has held that probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a *particular place*." *Smith v. Thornburg*, 136 F.3d 1070, 1074-75 (6th Cir. 1998) (emphasis added) (quoting *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994)). Here, Williams railroads through the necessary protection measures that require a nexus between the search and the particular place that raised his suspicions (the THC box in the console). When Williams notified Moralez of his intent to search the vehicle, Moralez

told Williams that the THC box was empty of any illegal contents. Not satisfied and exceeding the scope of his authority, Williams stated "well, I'm gonna look," and proceeded to search the *entire vehicle* without consent. The officers searched everything but the THC box; Williams searched the trunk, while the second officer searched the passenger side. Notably, even if the box itself warranted probable cause for a search, the officers would have only had authority to search the box, not the entire vehicle. *See California v. Acevedo*, 500 U.S. 565, 580 (1991).

Third, Williams argues that Moralez's nervous demeanor led him to believe that a crime was taking place. However, this Court has held that "factors such as a person's nervousness . . . while part of the reasonable suspicion analysis, are given little weight." *United States v. Johnson*, 482 F. App'x 137, 145 (6th Cir. 2012) (quoting *United States v. Samuels*, 443 F. App'x 156, 161 (6th Cir. 2011)). Williams stated that he observed Moralez "displaying extreme nervous behavior, more than what you'd display if you were just stopped for a speeding ticket." Williams's observation of Moralez's behavior is inconsequential as "[t]ime and again, we have said that nervousness—even extreme nervousness— 'is an unreliable indicator' . . . 'especially in the context of a traffic stop.'" *See United States v. Noble*, 762 F.3d 509, 522-23 (6th Cir. 2014) (quoting *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004)).

An analysis of the record shows that the glass vial of white powder could not have created probable cause because Williams did not know of the glass vial until after the search began. In addition, the presence of an empty box labeled "THC" only creates a mere hunch that a crime has been committed. Even assuming that the box at issue here could be used to establish probable cause, only the box would be subject to a search, rather than the entire vehicle. Finally, Moralez's nervous behavior is an unreliable indicator that a crime is being committed and cannot establish

probable cause alone. Thus, it is eminently clear that the totality of the circumstances show Williams lacked probable cause to search Moralez's vehicle. Therefore, I dissent.