STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2023 KA 1297

STATE OF LOUISIANA

VERSUS

LAUREN NICOLE DIAZ

JUDGMENT RENDERED: JUN 0 3 2024

* * * * * * *

Appealed from the Twenty-Second Judicial District Court

Parish of St. Tammany • State of Louisiana

Docket Number 2092-F-2023 • Division A

The Honorable Raymond S. Childress, Presiding Judge

* * * * * * *

Lieu T. Vo Clark
*Louisiana Appellate Project*
Mandeville, Louisiana

COUNSEL FOR APPELLANT
DEFENDANT—Lauren Nicole
Diaz


J. Collin Sims
*District Attorney*
Butch Wilson
*Assistant District Attorney*
Covington, Louisiana

COUNSEL FOR APPELLEE
State of Louisiana

* * * * * * *

**BEFORE: WELCH, WOLFE, AND STROMBERG, JJ.**

**STROMBERG, J.**

The defendant, Lauren Nicole Diaz, was charged by bill of information with possession of methamphetamine (less than two grams) (Count 1) and possession of heroin (less than two grams) (Count 2), felonies in violation of La. R.S. 40:967(C)(1) and 40:966(C)(4)(a), respectively.[1] The defendant initially pled not guilty on both counts. The defendant moved to suppress the evidence the State intended to use against her at trial. Following a hearing, the trial court denied the motion to suppress. Thereafter, the defendant pled guilty as charged on both counts, reserving her right to seek review of the ruling on the motion to suppress. See **State v. Crosby**, 338 So.2d 584, 591 (La. 1976).[2] The trial court sentenced the defendant on each count to two years imprisonment with the Department of Public Safety and Corrections and ordered the sentences to be served concurrently.[3] The defendant now appeals, designating one assignment of error. For the following reasons, we reverse the trial court's ruling denying the motion to suppress, set aside the convictions and sentences, and remand this case to the trial court for further proceedings to allow the defendant the opportunity to withdraw her guilty pleas.

## FACTS

Because the defendant pled guilty, the facts were not fully developed. The traffic stop, detention, dog sniff, and search of the vehicle in question were

---

[1] In the same bill of information, the State charged the co-defendant, Thomas Edward Wood, with possession of methamphetamine (less than two grams), in violation of La. R.S. 40:967(C)(1).

[2] While a plea of guilty normally waives all non-jurisdictional defects in the proceedings prior to the plea, a plea under **Crosby** allows appellate review if, at the time the plea is entered, the defendant expressly reserves the right to appeal a specific adverse ruling in the case. **Crosby**, 338 So.2d at 591.

[3] The trial court also sentenced the defendant to thirty days in parish jail for misdemeanor possession of drug paraphernalia, a violation of La. R.S. 40:1023(C) and ordered the sentence to be served concurrently with Counts 1 and 2.

2

captured on the arresting officers body camera.[4] The body camera video was entered into evidence as State Exhibit 1 ("S-1") at the suppression hearing. The following facts were derived from the body camera video and the testimony adduced at the suppression hearing.

On April 11, 2023, at approximately 3:32 a.m., Sergeant Blaine Morgan and three other officers with the Covington Police Department executed a traffic stop on a Volkswagen being driven by Thomas Wood for speeding and swerving outside its lane of travel. Two adult females were riding as passengers in the vehicle. Sergeant Morgan approached the vehicle on the passenger side, he explained the reasons for the stop, and he requested that Mr. Wood provide his driver's license, vehicle registration, and insurance. Mr. Wood produced his driver's license and registration, but he was unable to pull up his insurance on his cellular phone because the battery was dead. Mr. Wood asked Sergeant Morgan if he could pull up his insurance information on his computer. Sergeant Morgan ran a background check on Mr. Wood. There was no indication that Mr. Wood had any outstanding warrants or a criminal record. No traffic citation was issued.

Mr. Wood was asked to exit the vehicle. Mr. Wood told Sergeant Morgan that he had driven from Dallas, Texas, to Bogalusa, Louisiana, to drop off a friend named "Nick." Officer Morgan became suspicious that Mr. Wood was trafficking narcotics when Mr. Wood stated that he left Dallas at 3:00 p.m. on the previous day, stayed at his friend's house for approximately thirty minutes, and was heading back to Dallas. In addition, Mr. Wood could not provide the names of the two female passengers riding with him in the vehicle. One of the female passengers, who was later identified as Lauren Nicole Diaz (the defendant), initially did not provide her identification. The other passenger was Kaitlyn Carr.

---

[4] The body camera time-stamp was ahead by one hour.

3

Sergeant Morgan asked the defendant to exit the vehicle, and he questioned her about their travel itinerary. The defendant explained that Nick was Ms. Carr's and her friend, and she confirmed that they had just met Mr. Wood, whom she referred to as "Tommy," the previous day. The defendant also indicated that they had dropped Nick off at a house in Bogalusa and were heading back to Dallas.

Sergeant Morgan returned to Mr. Wood and told him that his story did not add up, and he asked for consent to search the vehicle. Mr. Wood declined to give consent. Sergeant Morgan reported his suspicions to his supervisor and he was given permission to call for a canine unit. The canine handler, Detective Crader, arrived twenty minutes later, and he walked the dog around the vehicle three times.[5] The dog did not alert to the presence of narcotics in the vehicle. After having a private conversation with Sergeant Morgan, Detective Crader approached the three detained individuals, who were still outside their vehicle, and he asked when was the last time any of them had smoked weed, claiming he smelled weed on "somebody."

Ms. Carr stated that she had smoked marijuana inside the vehicle seven hours earlier that day.[6] After this admission, Sergeant Morgan searched the vehicle, during which he discovered pills, methamphetamine, and heroin inside a backpack located in the backseat on the floorboard. The defendant told Sergeant Morgan that the backpack and its contents belonged to her. After being placed under arrest and read her **Miranda** rights,[7] the defendant informed Sergeant Morgan the reason she did not provide her name was because she was on the run and she had outstanding charges in Texas. Sergeant Morgan booked the defendant on drug charges and a fugitive warrant.

---

[5] Detective Crader's first name is not in the record.

[6] At the suppression hearing, Sergeant Morgan mistakenly testified that it was the defendant who stated she smoked weed seven hours prior. However, the video shows that it was Ms. Carr who made this statement.

[7] See **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

# DENIAL OF MOTION TO SUPPRESS

In her sole assignment of error, the defendant argues the trial court erred in denying the motion to suppress the evidence when the officer did not have sufficient reasonable suspicion to extend the traffic stop in order to call a canine unit to conduct a dog sniff search or to further extend the stop after the canine failed to alert on the vehicle. The defendant concluded that the officers extended the stop to engage in a fishing expedition for contraband without reasonable suspicion, in violation of La. C.Cr.P. art. 215.1 and **Rodriguez v. United States,** 575 U.S. 348, 350-51, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015).

A trial court's ruling on a motion to suppress evidence is entitled to great weight because the trial court had the opportunity to observe the witnesses and weigh the credibility of their testimony. **State v. Landor,** 2020-0336 (La. App. 1 Cir. 2/19/21), 318 So.3d 225, 228. When a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court's discretion, *i.e.,* unless such ruling is not supported by the evidence. See **State v. Hunt,** 2009-1589 (La. 12/1/09), 25 So.3d 746, 751. A trial court's legal findings, however, are subject to a *de novo* standard of review. **Hunt,** 25 So.3d at 751; **Landor,** 318 So.3d at 228.

The Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. A defendant may move to suppress any evidence from use at trial on the basis that it was unconstitutionally obtained. La. C.Cr.P. art. 703(A). A search and seizure conducted without a warrant issued on probable cause is *per se* unreasonable unless the State can affirmatively show that the warrantless search and seizure was justified by one of the narrowly drawn exceptions to the warrant requirement. See La. C.Cr.P. art. 703(D); **State v. Surtain,** 2009-1835 (La. 3/16/10), 31 So.3d 1037, 1043. Generally, if evidence was derived from an

5

unlawful search or seizure, the proper remedy is exclusion of the evidence from trial. **State v. Benjamin**, 97-3065 (La. 12/1/98), 722 So.2d 988, 989. On a motion to suppress evidence on the ground that it was unconstitutionally obtained, the prosecution has the burden of proving the admissibility of any evidence seized without a warrant. La. C.Cr.P. art. 703(D).

The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La. C.Cr.P. art. 215.1, as well as both federal and state jurisprudence. See **Terry v. Ohio**, 392 U.S. 1, 30-31, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889 (1968); **State v. Cyprian**, 2021-0287 (La. App. 1 Cir. 12/22/21), 340 So.3d 271, 281-82. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. **Whren v. United States**, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). Although they may serve as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants. **State v. Waters**, 2000-0356 (La. 3/12/01), 780 So.2d 1053, 1056 (*per curiam*).

## DETENTION FOR CANINE SNIFF

The defendant does not dispute the reasonableness of Sergeant Morgan's decision to stop the vehicle. Rather, she argues the stop was unlawfully prolonged in violation of her constitutional rights. In conducting a traffic stop, "an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity." La. C.Cr.P. art. 215.1(D). During the stop, the officer has the right to conduct a routine license and registration check and, while doing so, may engage in conversation with the driver and any passenger. See **State v. Lopez**, 2000-0562 (La. 10/30/00), 772

6

So.2d 90, 92-93 (*per curiam*). If the officer develops reasonable suspicion of criminal activity, he may further detain the individual while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion. See **United States v. Sharpe**, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985).

Reasonable suspicion for an investigatory stop is something less than probable cause and must be determined under the specific facts of each case by whether the officer had sufficient knowledge of particular facts and circumstances to justify the infringement on the individual's right to be free from governmental interference. **State v. Thompson**, 2002-0333 (La. 4/9/03), 842 So.2d 330, 335. In determining whether the officer has a reasonable suspicion of some separate illegal activity that justifies further detention, the totality of the circumstances must be taken into account. **State v. Kalie**, 96-2650 (La. 9/19/97), 699 So.2d 879, 881 (*per curiam*). The officer must point to specific, articulable facts. Inchoate suspicions and unparticularized hunches do not provide reasonable suspicion. **United States v. Leon**, 80 F.4th 1160, 1165 (10th Cir. 2023).

In **Rodriguez**, the question presented was "whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." **Rodriguez**, 575 U.S. at 353, 135 S.Ct. at 1614. Therein, a traffic stop was initiated because the vehicle was being driven on the shoulder of the road. The officer completed the traffic stop and issued a citation in about twenty-one minutes. After the citation was issued, the officer detained the defendant while waiting for a second officer to arrive. When the second officer arrived, the first officer retrieved his dog, performed a sniff test and search of the vehicle, and discovered a bag of methamphetamine. **Rodriguez**, 575 U.S at 351-52, 135 S.Ct. at 1612-13.

7

The United States Supreme Court held that it was a violation of the Fourth Amendment to detain the defendant after the citation was issued and further noted that an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop," but may not prolong the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual. **Rodriguez**, 575 U.S. at 355, 135 S.Ct. at 1615. The federal Fifth Circuit has emphasized that **Rodriguez** has limited relevance once reasonable suspicion is established. See **United States v. Davis**, 620 Fed.Appx. 295, 299 n. 1 (5th Cir. 2015); **State v. Spearman**, 2019-0065 (La. App. 1 Cir. 5/31/19), 2019 WL 2315415, *5 (unpublished), writ denied, 2019-01108 (La. 3/16/20), 370 So.3d 728.

## MOTION TO SUPPRESS

At the hearing on the motion to suppress, Sergeant Morgan testified that he initially stopped Mr. Wood for speeding and swerving off West Twenty-First Street at E.J. Fieldings. Sergeant Morgan testified that Mr. Woods contention that he had driven from Dallas to Bogalusa in seven hours and fifteen minutes, and that he had only stopped to use the bathroom and get gas, made him suspicious that Mr. Wood was trafficking narcotics. Sergeant Morgan approached Mr. Wood and asked him if the vehicle contained weapons, which Mr. Wood indicated it did not. Sergeant Morgan testified that when he asked for consent to search the vehicle, Mr. Wood paused for about thirty seconds, or maybe a minute, and he looked back at the car and asked Sergeant Morgan what he thought was suspicious.[8] Sergeant Morgan told Mr. Wood that his story did not add up. Mr. Wood declined to give consent. Sergeant Morgan called his supervisor and he requested a canine unit. Detective Crader arrived approximately thirty-seven minutes after the initial stop

---

[8] Contrary to Sergeant Morgan's testimony, the video does not show that Mr. Wood paused for thirty seconds to a minute before responding to Sergeant Morgan's request for consent to search the vehicle.

and ran the dog around the vehicle three times. The canine did not alert on the vehicle.

The testimony provided by Sergeant Morgan at the suppression hearing supports probable cause for the initial stop of the vehicle, as he testified that Mr. Wood was speeding, which is a violation of La. R.S. 32:64(A). Sergeant Morgan's body camera video, which was played at the suppression hearing, is the best evidence of what occurred during the subsequent detention. After speaking with Mr. Wood regarding the length of his trip, his plan to drive back to Dallas after driving over seven hours, only stopping to get gas and only staying at his friend's house for thirty minutes, and his inability to provide the names of his two passengers, Sergeant Morgan acquired reasonable suspicion to extend the traffic stop to request a canine to sniff the vehicle for contraband. The body camera video reflects that thirteen minutes into the stop, Sergeant Morgan received permission to request a canine unit. Sergeant Morgan then informed Mr. Wood, the defendant, and Ms. Carr that they were not free to leave, and he instructed the defendant and Ms. Carr to exit the vehicle and to wait by his patrol truck. The body camera video reflects that the canine unit arrived thirty-seven minutes after the initial stop.

In ruling on the motion to suppress, the trial court noted there were three people in the car, claiming not to know each other at 3:00 o'clock in the morning, driving through Covington. The trial court found that Sergeant Morgan had probable cause to make the stop based upon his observation of the driver speeding and swerving. The trial court found that following the stop, Sergeant Morgan had reasonable suspicion to further investigate, which was based upon his experience and the responses he received from the occupants that caused him to believe there may be drugs in the vehicle.

The present case is distinguishable from **Rodriguez** because Sergeant Morgan was able to articulate reasons for extending the traffic stop to investigate

9

his suspicion that Mr. Wood was involved in drug trafficking. The body camera video shows that Sergeant Morgan requested the canine unit within seventeen minutes of encountering Mr. Wood, and the canine arrived twenty minutes later. Louisiana courts have upheld detentions of similar duration when the detaining officers diligently pursued their investigation. See e.g., **State v. Miller**, 2000-1657 (La. 10/26/01), 798 So.2d 947, 951 (*per curiam*) (The court upheld a 53-minute detention where the officers acted diligently in summoning a canine unit to search a vehicle suspected of transporting marijuana.); **State v. Burney**, 47,056 (La. App. 2 Cir. 5/23/12), 92 So.3d 1184, 1192-93, writ denied, 2012-1469 (La. 1/11/13), 106 So.3d 548 (An extension of a lawful traffic stop for approximately forty-three minutes from the time the defendant refused consent to search the vehicle to the canine unit's arrival was justifiable.).

The use of a drug dog as a means of investigation, following a traffic stop, is one way to confirm or dispel the officer's reasonable suspicion. See **Kalie**, 699 So.2d at 881; **Burney**, 92 So.3d at 1192. A dog sniff of the vehicles exterior surfaces is not a "search" under the meaning of the Fourth Amendment. See **United States v. Place**, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644-45, 77 L.Ed.2d 110 (1983).

The record shows that following the traffic stop, Sergeant Morgan articulated facts showing that he had reasonable suspicion of illegal drug activity, justifying extending the length of the traffic stop while he pursued a means of investigation likely to quickly confirm or dispel the particular suspicion. While the defendant complains that there was a significant period of time when none of the officers on the scene took any steps to do anything related to the initial traffic stop, this time elapsed between Mr. Woods refusal of consent and the arrival of the canine unit. Considering that reasonable suspicion was established, detaining the

three occupants for thirty-seven minutes for a canine unit was not a violation of the Fourth Amendment's prohibition against unreasonable seizures.

## SUBSEQUENT SEARCH BASED ON SMELL OF MARIJUANA

The defendant additionally argues that the trial court erred in denying the motion to suppress the evidence because the officer did not have sufficient reasonable suspicion to further extend the stop after the canine failed to alert on the vehicle and dispelled the officer's suspicion of possible narcotics trafficking. The body camera video reflects that the entire traffic stop lasted approximately one hour and twenty-three minutes.

In a suppression of evidence hearing, as stated earlier, when a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings. **Hunt**, 25 So.3d at 751. Although appellate courts should accord deference to the fact-finder, they nonetheless have a constitutional duty to review facts. **Ambrose v. New Orleans Police Department Ambulance Service**, 93-3099 (La. 7/5/94), 639 So.2d 216, 221. "To perform its constitutional duty properly, an appellate court must determine whether the trial court's conclusions were clearly wrong based on the evidence or clearly without evidentiary support." **Perkins v. Entergy Corp.**, 2000-1372 (La. 3/23/01), 782 So.2d 606, 613. If documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error regarding a finding purportedly based on a credibility determination. **State v. Robinson**, 52,974 (La. App. 2 Cir. 3/18/20), 293 So.3d 193, 201, writ denied, 2020-00525 (La. 10/20/20), 303 So.3d 315.

11

There is no bright line rule for when a detention lasts too long and each instance must be assessed in view of the surrounding circumstances. **State v. Bell-Brayboy**, 53,413 (La. App. 2 Cir. 3/4/20), 310 So.3d 252, 264, <u>writ denied</u>, 2020-01061 (La. 12/8/20), 306 So.3d 427. The United States Supreme Court has recognized that an investigatory stop that continues indefinitely will at some point no longer be justified as an investigatory stop. **Sharpe**, 470 U.S. at 685, 105 S.Ct. at 1575. Courts have consistently held that the odor of marijuana provides an officer with probable cause to conduct warrantless searches of vehicles. <u>See</u> **State v. Matthews**, 2015-1281 (La. App. 1 Cir. 2/26/16), 191 So.3d 1080, 1085 n.2; **State v. Simmons**, 2022-232 (La. App. 5 Cir. 7/6/22), 346 So.3d 349, 356 (Once Trooper Stegall smelled the presence of fresh marijuana in the vehicle during the lawful stop, the officers had probable cause to search the vehicle.). <u>See also</u> **State v. Allen**, 2010-1016 (La. 5/7/10), 55 So.3d 756 *(per curiam)*. The case law does not show that the odor of marijuana on a person, by itself, provides probable cause to search the interior of a vehicle or any closed containers therein.

In **Robinson**, the Second Circuit Court of Appeal found that the investigating officers' testimonies regarding what occurred during a detention following a traffic stop and the subsequent search of the vehicle must be rejected in their entirety as lacking credibility, and that the trial court committed manifest error in relying on those testimonies. <u>See</u> **Robinson**, 293 So.3d at 206-09. In summary, the Second Circuit found that Officer Joshua Lavrinc's testimony was contradicted by the dashboard camera video. In addition, the video did not support Officer Mitchell Hackett's testimony regarding the plastic baggie being in plain view in the vehicle. <u>See</u> **Robinson**, 293 So.3d at 208-09. Based upon these findings, the Second Circuit reversed the trial court's ruling denying the motion to suppress and remanded for further proceedings. <u>See</u> **Robinson**, 293 So.3d at 210-11.

## DISCUSSION

Here, the State relies on the testimony of Sergeant Morgan and the body camera video for probable cause for the search of the vehicle. The footage from Sergeant Morgan's body camera reflects that while waiting for the canine unit, the officers engaged all three detainees in conversation and entered the front seat of the vehicle to retrieve cigarettes and the trunk of the vehicle to retrieve a jacket for Mr. Wood. On cross-examination, Sergeant Morgan testified that when he approached the vehicle and spoke to Mr. Wood, he smelled the strong odor of cigarette smoke, but he did not smell marijuana. None of the officers at the scene of the stop indicated, at any point, that they smelled marijuana coming from the vehicle or from any of the three detainees. Detective Crader, while walking the dog around the car three times as the driver side window was down, did not mention the smell of marijuana. As Detective Crader walked away from the vehicle with the dog, he shook his head side-to-side as he passed Sergeant Morgan, signaling that the dog did not alert on the vehicle.

Sergeant Morgan did not release the detainees. Instead, he engaged in a private conversation with Detective Crader. At this point, thirty-eight minutes had passed since the initial stop. When asked on cross-examination, Sergeant Morgan stated he did not recall talking to Detective Crader and asking if he wanted to give it a try. Detective Crader did not testify at the suppression hearing. Sergeant Morgan's body camera video footage reflects that he accompanied Detective Crader as he placed the canine in the back of his vehicle. At that point, Sergeant Morgan asked: "Kick [th]em loose now, huh?" Detective Crader did not immediately respond. He subsequently stated something along the lines of, "They don't know the dog did not find anything," and he mentioned the cigarettes in the vehicle. Sergeant Morgan then asked Detective Crader, "You want to give it a shot?"

13

Detective Crader then approached the three detainees and asked Mr. Wood, "What's in the car?" When Detective Crader did not get the response he wanted, he then asked, "When is the last time any of y'all smoked weed?" He quickly followed that question up with the allegation that he smelled weed on "somebody." Ms. Carr, who was seated on the ground, stated that she had smoked weed seven hours earlier inside the vehicle, and the defendant stated she "hit a doobie" before they left Texas. At that point, Sergeant Morgan immediately went to the vehicle and conducted a search.

Other than a hunch, Sergeant Morgan failed to point to any specific, articulable facts that justified extending the traffic stop once the dog failed to alert on the vehicle. This is evidenced by his inquiry of whether we should "[k]ick [th]em loose." Further, if Detective Crader had in fact smelled marijuana on "somebody," then he would not have had to ask who smoked weed, as the odor of marijuana provides probable cause to conduct a warrantless search of a vehicle. **Allen**, 55 So.3d at 756; **Landor**, 318 So.3d at 229. Undoubtedly, Detective Crader was aware of this. "[A]n officer may not manufacture probable cause by unlawful means, including by way of a false claim of legal authority that constitutes a threat to violate the Fourth Amendment." **United States v. Saafir**, 754 F.3d 262, 266 (4th Cir. 2014) (*per curiam*). See also **United States v. Guzman**, 739 F.3d 241, 247 (5th Cir. 2014).

In **Saafir**, the court concluded that where an officer's assertion that he had probable cause to search a vehicle (when he in fact did not) resulted in eliciting incriminating statements from a suspect, those statements could not then be relied upon to establish probable cause. See **Saafir**, 754 F.3d at 265-66. The court reasoned that "a search is unreasonable—and so violates the Fourth Amendment—if its justification is grounded in officers 'engaging or threatening to engage in conduct that violates the Fourth Amendment.'" **Saafir**, 754 F.3d at 266 (quoting

14

**Kentucky v. King**, 563 U.S. 452, 462, 131 S.Ct. 1849, 1858, 179 L.Ed.2d 865 (2011)).

In **State v. Ellis**, 2019-0634 (La. 9/24/19), 279 So.3d 901 (*per curiam*), the Louisiana Supreme Court found that after a search of the defendant's vehicle yielded no contraband, the deputy did not have reasonable suspicion of additional criminal activity so as to justify a continued investigation of defendant in connection with the traffic stop. Because reasonable suspicion was lacking, the deputy's announcement that a female officer was en route to perform a pat-down of defendant constituted a threat to conduct an unlawful search under the Fourth Amendment, as the deputy had no authority to do a pat-down without a warrant. **Ellis**, 279 So.3d at 902. See also **State v. Bunnell**, 517 So.2d 439, 441 (La. App. 1 Cir. 1987), wherein this court held a generalized hunch that an individual is involved in criminal conduct is not sufficient to detain an individual or his automobile. In **Bunnell**, the officer was "just" suspicious due to the driver's nervousness, the passengers peering into the back seat, and the variations in their stories and licensing. **Bunnell**, 517 So.2d at 440. If an officer violates a person's constitutional rights after the initial traffic stop investigation ends and searches a car anyway, any evidence obtained and used against that person must be excluded. See **Mapp v. Ohio**, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

The State cites **State v. Hill**, 97-2551 (La. 11/6/98), 725 So.2d 1282, wherein the Louisiana Supreme Court had to determine whether the lower court properly suppressed evidence seized from the defendant in a search incident to his arrest on outstanding warrants, after determining that the initial **Terry** stop was unlawful. The facts showed that two police officers received a general tip of narcotics activity. The officers observed two men, one of whom was the defendant, standing in front of an abandoned building. When the officers exited

15

their vehicle and approached, the defendant and his companion began walking away from the officers in the opposite direction. The officers initiated a conversation with both men and frisked them for weapons, finding nothing. While conducting the interview, a computer search revealed the defendant had two outstanding arrest warrants. The officers then placed the defendant under arrest, and during the search incident to that arrest, the officers discovered a crack pipe in the defendant's rear pant pocket. See **Hill**, 725 So.2d at 1283.

The Fourth Circuit Court of Appeal upheld the trial court's decision to grant the defendant's motion to suppress, noting that because the detention was "not lawful," and the officers only learned of the outstanding warrants after the initial detention and frisk of the defendant, the resultant discovery of the outstanding arrest warrants was also unlawful. Because the arrest was made pursuant to illegally obtained warrant information, the Fourth Circuit found that the subsequent seizure of the crack pipe incident to the unlawful arrest was an unlawful seizure and the crack pipe was properly suppressed. See **State v. Hill**, 97-1012 (La. App. 4 Cir. 9/17/97), 700 So.2d 551, 553. On review, the Louisiana Supreme Court reversed, finding that the "attenuation doctrine" exception to the exclusionary rule applied. See **Hill**, 725 So.2d at 1284. The Louisiana Supreme Court relied extensively on **Brown v. Illinois**, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 427 (1975), in which the court enunciated a multi-factor test to consider whether evidence impermissibly seized should be suppressed. See **Hill**, 725 So.2d at 1284-86.

**Hill** is factually distinguishable from our case, as it does not involve a traffic stop that was recorded. **Hill** is also legally distinguishable from our case, as it involved an unlawful stop and arrest. In contrast, the officers in the case at bar had probable cause for the stop, but they did not learn of the defendant's outstanding arrest warrant until after they searched the vehicle.

In the instant case, once the dog failed to alert on the vehicle, the officers did not have a lawful reason to extend the already prolonged traffic stop. The record reflects that, despite having face-to-face conversations with three detainees while waiting approximately forty minutes for the canine unit to arrive, Sergeant Morgan admitted that neither he nor the other three officers present at the scene noted the smell of marijuana on the occupants. The warrantless search cannot be justified by the alleged observation of the odor of marijuana by Detective Crader, which is not supported by the record and is internally inconsistent with Sergeant Morgan's testimony, who was the sole witness to testify at the suppression hearing. Nor was it justified by Ms. Carr's admission that she had smoked weed seven hours earlier, or the defendant's admission she smoked a doobie before leaving Texas. This court cannot disregard the fact that Sergeant Morgan's body camera video reveals that Detective Crader's contention that he smelled marijuana on "somebody" was not a credible statement, but meant to gain probable cause to search the vehicle where none existed. Thus, the discrepancies between the officer's testimony and the video footage undermines the credibility of the officer and supports the granting of defendant's motion to suppress.

For the foregoing reasons, we find that the trial court committed manifest error in denying the motion to suppress as the evidence seized resulted from an unlawfully prolonged detention, and a search that was not based on probable cause. Accordingly, the ruling of the trial court denying defendant's motion to suppress is reversed, the defendant's convictions and sentences are set aside, and this case is remanded to the trial court for further proceedings to allow the defendant the opportunity to withdraw her guilty pleas.

## PATENT ERROR

Pursuant to La. C.Cr.P. art. 920, this court routinely conducts a review for error discoverable by mere inspection of the pleadings and proceedings and

17

without inspection of the evidence. After a careful review of the record, we find no patent error.

**RULING ON MOTION TO SUPPRESS REVERSED; CONVICTIONS AND SENTENCES VACATED AND REMANDED FOR FURTHER PROCEEDINGS TO ALLOW THE DEFENDANT THE OPPORTUNITY TO WITHDRAW HER GUILTY PLEAS.**

18